## MYRICK *v.* MICHIGAN CENTRAL RAILROAD COMPANY.

1. In the absence of a special contract, a railroad company, by receiving cattle for transportation over its own line and other lines therewith connected, is only bound to carry the cattle over its own line, and deliver them safely to the next connecting carrier.

2. A contract whereby the liability of the company is sought to be extended beyond such carriage and delivery will not be inferred from loose and doubtful expressions, but must be established by clear and satisfactory evidence. Taking a through fare on the receipt of the cattle does not establish such liability.

3. The receipt of the company, *post*, p. 103, does not of itself constitute such contract. The circumstances under which it was given should have been submitted to the jury, to determine whether in fact a through contract was made.

4. In passing upon the rights of the parties, this court will not be controlled by the judicial decisions of the State where the contract of carriage was made.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This is an action for breach of two alleged contracts of the Michigan Central Railroad Company with the plaintiff, Paris Myrick, each to carry for him two hundred and two head of cattle from Chicago to Philadelphia, and there deliver them to his order. It arises out of these facts: Myrick was in 1877 engaged, at Chicago, in the business of buying cattle, sometimes on his own account and sometimes for others, and forwarding them by railway to Philadelphia. The company is a corporation created by the State of Michigan, and its line extends from Chicago to Detroit, where it connects with the Great Western Railroad, which, by its connections, leads to Philadelphia.

In November, 1877, Myrick purchased two lots of cattle, each consisting of two hundred and two head, and shipped them over the road of the company. One of the purchases

and shipments was made on the 7th and the other on the 14th of the month. It will suffice to give the particulars of the first of these transactions, as they were identical in all respects, except in the amount of the draft negotiated and the weight of the cattle.

On the shipment of the cattle Myrick took from the company a receipt, as follows:—

"Michigan Central Railroad Company,
Chicago Station, Nov. 7th, 1877.

"Received from Paris Myrick, in apparent good order, consigned order Paris Myrick (notify J. and W. Blaker, Philadelphia, Pa.):

| Articles. | Weight or Measure. |
|---|---|
| Two hundred and two (202) cattle . . . . . . . . . . . . . . . . . . | 240,000 |

"Advance charges, $12.00. Marked and described as above (contents and value otherwise unknown) for transportation by the Michigan Central Railroad Company to the warehouse at

"Wm. Geagan, *Agent.*"

On the margin of the receipt was the following:—

"This company will not hold itself responsible for the accuracy of these weights as between buyer and seller, the approximate weight having been ascertained by track-scales, which are sufficiently accurate for freighting purposes, but may not be strictly correct as between buyer and seller. This receipt can be exchanged for a through bill of lading.

"Notice.— See rules of transportation on the back hereof. Use separate receipts for each consignment."

On the back of the receipt the rules were printed, one of which, the eleventh, was as follows:—

"Goods or property consigned to any place off the company's line of road, or to any point or place beyond the termini, will be sent forward by a carrier or freightman, when there are such, in the usual manner, the company acting, for the purpose of delivery to such carrier, as the agent of the consignor or consignee, and not as carrier. The company will not be liable or responsible for any

loss, damage, or injury to the property after the same shall have been sent from any warehouse or station of the company."

On the day this receipt was obtained, Myrick drew and delivered to the Commercial National Bank, at Chicago, a draft, of which the following is a copy: —

"$12,287.57.]                                     CHICAGO, Nov. 7, 1877.
"Pay to the order of Geo. L. Otis, cashier, twelve thousand two hundred and eighty-seven $\frac{57}{100}$ dollars, value received, and charge the same to account of                              PARIS MYRICK.
"To J. and W. BLAKER, Newtown, Pa."

As security for its payment Myrick indorsed the receipt obtained from the railroad company and delivered it, with the draft, to the bank, which thereupon gave him the money for it.

The cattle were carried on the road of the Michigan Central to Detroit, and thence over the road of the Great Western Railroad Company to Buffalo, and thence over the roads of other companies to Philadelphia, the last of which was the road of the North Pennsylvania Railroad Company. They arrived in Philadelphia in about four days after their shipment, where, according to the uniform custom in the course of business of the railroad company, they were turned over to the Drove-Yard Company, which was formed for the purpose of receiving cattle arriving there, taking care of them, and delivering them to their owners or consignees. This company notified the Blakers of the arrival of the cattle, and delivered them to those parties without the production of the carrier's receipt transferred by Myrick to the Commercial National Bank. The Blakers paid the expense of the transportation, took possession of the cattle, sold them, and appropriated the proceeds. The lot shipped on the 14th of November were delivered in like manner to the Blakers by the Drove-Yard Company without the production of the carrier's receipt, given to the bank, and were in like manner disposed of. Soon afterwards the Blakers failed, and the two drafts on them, one made upon the shipment of November 7 and the other on the shipment of November 14, were not paid. Hence the present action for the value of the cattle thus lost to the bank, Myrick suing for its use.

It appeared on the trial that Myrick had made previous

shipments of cattle from Chicago to Philadelphia and taken similar receipts from the Michigan Central Railroad Company; that the cattle shipped had always been delivered by the Pennsylvania Company, at Philadelphia, to the Drove-Yard Company there, and by that company delivered to the Blakers without the production of the carrier's receipt or any bill of lading; that the Blakers were dealers in cattle and had particular pens in the yards assigned to them; that the cattle of the shipments of November 7 and November 14 were, on their arrival, placed by the superintendent of the drove-yards in those pens and were sold by the Blakers on the following day, and that the carrier's receipt was not called for either by the railroad or the stock-yard company. It also appeared on the trial that Myrick bought the cattle for the Blakers, and that a person employed by them accompanied the cattle from Chicago until their delivery at the drove-yard at Philadelphia; that the through rate from Chicago to Philadelphia on the cattle was fifty-eight cents per hundred; that notice of this rate was posted in the station of the defendant company at Chicago, and that it was not the custom of the railroad company at Philadelphia to look to the consignee for freight, but collected it from the Drove-Yard Company.

The court was requested to give to the jury various instructions, one of which, though presented under many forms, amounts substantially to this: That as the road of the Michigan Central Railroad Company terminates at Detroit, the company was not bound, in the absence of special contract, to transport the cattle beyond such termination, and that the receipt of freight for a point beyond and an agreement for a through fare did not of themselves establish such a contract.

The court refused to give this instruction, or any embodying the principle which it expresses. On the contrary, it instructed the jury that the receipt, termed "bill of lading," under the circumstances in which it was made, was a through contract whereby the defendant agreed to transport the cattle named in it from Chicago to Philadelphia, and there deliver them to the order of Paris Myrick, and to notify the Blakers of their arrival; that this was the undertaking on the part of the defendant company with the plaintiff Myrick, and with any

assignee or holder of the contract. The facts attending the transaction not being disputed, there could be only one result from this instruction, — a recovery by the plaintiff. From the judgment entered thereon the case was brought to this court for review.

*Mr. George F. Edmunds* and *Mr. Andrew L. Osborn* for the plaintiff in error.

*Mr. Walter Cranston Larned* and *Mr. John N. Jewett* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court, and, after stating the case as above, proceeded as follows : —

The principal question presented by the instruction requested by the defendant has been elaborately considered and adjudged by this court. It is only necessary, therefore, to state the conclusion reached.

A railroad company is a carrier of goods for the public, and, as such, is bound to carry safely whatever goods are intrusted to it for transportation, within the course of its business, to the end of its route, and there deposit them in a suitable place for their owners or consignees. If the road of the company connects with other roads, and goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier that of a forwarder by the connecting line : that is, to deliver safely the goods to such line, — the next carrier on the route beyond. This forwarding duty arises from the obligation implied in taking the goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it. This is the doctrine of this court, although a different rule of liability is adopted in England and in some of the States. As was said in *Railroad Company* v. *Manufacturing Company*, " It is unfortunate for the interests of commerce that there is any diversity of opinion on such a subject; especially in this country ; but the rule that holds the carrier only liable to the extent of his own route, and for the safe storage and delivery to the next carrier, is in itself so just and reasonable that we do not hesitate to give it our sanction." 16 Wall. 318, 324.

This doctrine was approved in the subsequent case of *Railroad Company* v. *Pratt*, although the contract there was to carry through the whole route.    22 Wall. 123.    Such a contract may, of course, be made with any one of different connecting lines.    There is no objection in law to a contract of the kind, with its attendant liabilities.    See also *Insurance Company* v. *Railroad Company*, 104 U. S. 146.

The general doctrine, then, as to transportation by connecting lines, approved by this court, and also by a majority of the State courts, amounts to this : that each road, confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend.    In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence.    Although a railroad company is not a common carrier of live animals in the same sense that it is a carrier of goods, its responsibilities being in many respects different, yet when it undertakes generally to carry such freight it assumes, under similar conditions, the same obligations, so far as the route is concerned over which the freight is to be carried.

In the present case the court below held that by its receipt, construed in the light of the circumstances under which it was given, the Michigan Central Railroad Company assumed the responsibility of transporting the cattle over the whole route from Chicago to Philadelphia.    It did not submit the receipt with evidence of the attendant circumstances to the jury to determine whether such a through contract was made.    It ruled that the receipt itself constituted such a contract.    In this respect it erred.    The receipt does not, on its face, import any bargain to carry the freight through.    It does not say that the freight is to be transported to Philadelphia or that it was received for transportation there.    It only says that it is *consigned* to the order of Paris Myrick, and that the Blakers at Philadelphia are to be notified.    And, after the description of the property, it adds : " Marked and described as above (con-

tents and value otherwise unknown) for transportation by the Michigan Central Railroad Company to the warehouse at ——," leaving the place blank. This blank may have been intended for the insertion of some place on the road of the company, or at its termination. It cannot be assumed by the court, in the absence of evidence on the point, that it was intended for the place of the final destination of the cattle. On the margin of the receipt is the following: " NOTICE. — See rules of transportation on the back hereof." And among the rules is one declaring that goods consigned to any place off the company's line, or beyond it, would be sent forward by a carrier or freightman, when there are such, in the usual manner, the company acting for that purpose as the agent of the consignor or consignee, and not as carrier ; and that the company would not be responsible for any loss, damage, or injury to the property after the same shall have been sent from its warehouse or station. Though this rule, brought to the knowledge of the shipper, might not limit the liability imposed by a specific through contract, yet it would tend to rebut any inference of such a contract from the receipt of goods marked for a place beyond the road of the company.

The doctrine invoked by the plaintiff's counsel against the limitation by contract of the common-law responsibility of carriers has no application. There is, as already stated, no common-law responsibility devolving upon any carrier to transport goods over other than its own lines, and the laws of Illinois restricting the right to limit such responsibility do not, therefore, touch the case. Nor was the common-law liability of the defendant corporation enlarged by the fact that a notice of the charges for through transportation was posted in the defendant's station-house at Chicago. Such notices are usually found in stations on lines which connect with other lines, and they furnish important information to shippers, who naturally desire to know what the charges are for through freight as well as for those over a single line. It would be unfortunate if this information could not be given by a public notice in the station of a company without subjecting that company, if freight is taken by it, to responsibility for the manner in which it is carried on intermediate and connecting lines to the end of the route.

Nor was the liability of the company affected by the fact that the notice on the margin of the receipt stated that the ticket given might be " exchanged for a through bill of lading." It would seem to indicate that the receipt was not deemed of itself to constitute a through contract. The through bill of lading may also have contained a limitation as to the extent of the route over which the company would undertake to carry the cattle. Besides, if weight is to be given to this notice as characterizing the contract made, it must be taken with the rule to which it also calls attention, that the company assumed responsibility only for transportation over its own line.

It follows from the views expressed that the court below erred in its charge that the ticket or bill of lading was a through contract, whereby the defendant company agreed to transfer the cattle to Philadelphia, and safely deliver them there to the order of Myrick.

Our attention has been called to some decisions of the Supreme Court of Illinois, which would seem to hold that a railroad company which receives goods to carry, marked for a particular destination, though beyond its own line, is *prima facie* bound to carry them to that place and deliver them there ; and that an agreement to that effect is implied by the reception of goods thus marked. *Illinois Central Railroad Co.* v. *Frankenberg*, 54 Ill. 88 ; *Illinois Central Railroad Co.* v. *Johnson*, 34 id. 389.

Assuming that such is the purport of the decisions, they are not binding upon us. What constitutes a contract of carriage is not a question of local law, upon which the decision of a State court must control. It is a matter of general law, upon which this court will exercise its own judgment. *Chicago City* v. *Robbins*, 2 Black, 418 ; *Railroad Company* v. *National Bank*, 102 U. S. 14 ; *Hough* v. *Railway Company*, 100 id. 213.

If the doctrine of the Supreme Court of Illinois, as to what constitutes a contract of carriage over connecting lines of roads, is sound, it ought to govern, not only in Illinois, but in other States ; and yet the tribunals of other States, and a majority of them, hold the reverse of the Illinois court, and coincide with the views of this court. Such is the case in Massachusetts.

*Nutting* v. *Connecticut River Railroad Co.,* 1 Gray (Mass.), 502 ; *Burroughs* v. *Norwich & Worcester Railroad Co.,* 100 Mass. 26. If we are to follow on this subject the ruling of the State courts, we should be obliged to give a different interpretation to the same act — the reception of goods marked for a place beyond the road of the company — in different States, holding it to imply one thing in Illinois and another in Massachusetts.

The judgment must be reversed, and the case remanded for a new trial ; and it is

*So ordered.*