CENTRAL TRUST Co. OF NEW YORK and others *v.* WABASH, ST. L. & P. RY. Co. and others. (*In re* Intervening Petition of HOYLE.)

*(Circuit Court, E. D. Missouri, E. D.* June 22, 1887.)

CARRIERS—TRANSPORTATION BEYOND LINE.

The initial carrier of personal baggage over connecting lines of railroad is not liable for an injury to the baggage at a point beyond the terminus of its own line, unless it has assumed such liability by express agreement, or unless there is some arrangement in the nature of a partnership between it and the connecting carriers; and a finding that no such express agreement is shown

will be sustained, where it appears that a through ticket was purchased in the usual way, and that, although the purchaser of the ticket did not read the stipulations printed on it, a stipulation limiting the liability of the initial company selling it to losses occurring on its own line was printed on the ticket.

In Equity. Consolidated cause.

*Dyer, Lee & Ellis,* for intervenor.

*Geo. S. Grover* and *H. S. Priest,* for defendant.

THAYER, J. This is a claim for compensation for injuries to certain baggage while in transit from St. Louis to Boston, via the Wabash, Grand Trunk, West Shore, and Boston & Fitchburg Railroads. The injury was sustained in Canada on the line of the Grand Trunk Railroad. Following the ruling made in the case of *Myrick* v. *Michigan Cent. R. R.,* 107 U. S. 102, 1 Sup. Ct. Rep. 425, the master held that, in case of the transportation of persons and baggage from one point to another, over connecting lines of railroad, the initial carrier (in this case the Wabash Railroad) is not liable for an injury to the passenger or his baggage sustained beyond its own line, unless a special agreement is shown, by clear and satisfactory evidence, whereby the initial carrier is made responsible for what occurs on the lines of connecting carriers, and beyond its own terminus. The master held that the proof in this case did not establish such special agreement by clear and satisfactory proof, and accordingly dismissed the claim.

The rule of law which was applied to the case is undoubtedly correct. A common carrier is not liable for losses sustained beyond the terminus of its own line, unless it has assumed such liability by express contract, or unless some arrangement in the nature of a partnership exists between it and connecting carriers, which was not shown in this case. *Myrick* v. *Michigan Cent. R. R.,* 107 U. S. 102, 1 Sup. Ct. Rep. 425; *Railroad Co.* v. *Manufacturing Co.,* 16 Wall. 318; *Insurance Co.* v. *Railroad Co.,* 104 U. S. 157; *Elmore* v. *Naugatuck R. R.,* 23 Conn. 457; *Ellsworth* v. *Tartt,* 26 Ala. 733; *Knight* v. *Portland, S. & P. R. R.,* 56 Me. 234; *Milnor* v. *New York & N. H. R. R.,* 53 N. Y. 364; *Pennsylvania R. Co.* v. *Schwarzenberger,* 45 Pa. St. 208; *Burroughs* v. *Norwich & W. R. Co.,* 100 Mass. 26.

The only matter to be reviewed, therefore, is whether the master correctly found from the evidence that the claimant failed to show an express contract for safe carriage from St. Louis to Boston. There is little ground to question the master's finding on that issue. The evidence shows that intervenor inquired of the carrier's agent at St. Louis the price of through tickets, and whether passengers went through by that route without change of cars. Receiving an affirmative answer as to the last question, and information that the through fare was $24.50, he bought two tickets. The tickets were what are known as "coupon tickets," indicating the route to be traveled over, and were attached to a contract containing numerous provisions; the first being that the Wabash Company in selling the tickets only acted as agent of the connecting lines, and would not be responsible beyond its own line. Claimant testifies

that he did not examine the tickets, but it nowhere appears that the carrier's agent resorted to any artifice to prevent him from so doing. What occurred in the case of the purchase of these tickets is probably the same that occurs in nearly every instance of the purchase of tickets for a long railroad journey, involving a passage over several connecting railroads. Now, conceding that the acceptance of a through fare by the initial carrier is some evidence of an undertaking on its part to become responsible beyond the terminus of its own line, though by no means conclusive evidence on that point, and conceding, further, that the written and printed contract attached to the coupon tickets is not to be taken as the sole evidence of the agreement, inasmuch as claimant did not read the contract or have his attention expressly called to the same, still the evidence is insufficient to prove such special agreement as the claimant relies upon to extend the initial carrier's common-law liability, and make it responsible for losses beyond the terminus of its own line.

Although the written and printed stipulations on the face of the tickets are not to be regarded as the sole evidence of the contract, yet such stipulations may be considered, in connection with what transpired when the tickets were purchased, for the purpose, at least, of determining what were the carrier's intentions at the time, and what liability it intended to assume. Referring to the contract attached to the tickets solely for that purpose, and reading the same in the light of all that was said and done on that occasion, and it is manifest that the carrier did not intend to assume any liability beyond its own line, and never gave its assent to an agreement for safe carriage over the entire route. There was no meeting of minds on that proposition, and for that reason no express agreement to that effect. In the absence of such an undertaking, assented to by both parties, (the carrier and the passenger,) the former is only subject to its common-law obligation to safely carry over its own line, and safely deliver to the connecting carrier.

The master's report is accordingly confirmed.