THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. GEORGE C. RICHARDSON *et al.*

1. COMMON CARRIER—*Connecting Lines—Damages to Freight—Evidence.* Where a shipper sues a railroad company for damages to perishable freight, and alleges in his petition that such shipment was made to a point which is in fact beyond the line of defendant's road, under a written contract, by the terms of which it is expressly provided that the defendant shall not be responsible as a common carrier beyond its line of road, it is error to render judgment against the defendant because of delays occurring beyond the line of its road, where there is no showing of negligence on the part of the defendant, or of any injury to the freight while in its possession.

2. RAILROAD COMPANIES—*Official Reports—Competent Evidence.* The annual report of the board of railroad commissioners made to the governor is not of itself evidence of the facts therein stated with reference to the ownership and operation of a line of railroad, but the official reports made by the railroad companies under oath to the board of railroad commissioners, and required by law to be filed with them, or copies thereof duly certified by the secretary of the board, are competent evidence against the company making them.

*Error from Sedgwick Court of Common Pleas.*

RICHARDSON, SIMON & Co. brought this action in the district court of Sedgwick county, (which action was transferred to the court of common pleas of said county,) against the *Atchison, Topeka & Santa Fé Railroad Company,* alleging that on the 31st day of March, 1886, at Leavenworth, they delivered to the Leavenworth, Topeka & Southwestern Railway Company 135 barrels of apples, consigned to themselves at San Francisco, Cal.; that in consideration of $40.50 paid to said Leavenworth, Topeka & Southwestern Railway Company by the plaintiffs, said company entered into an agreement in writing, a copy of which is attached to the petition and marked "Exhibit A"; that in pursuance of said agreement, said Leavenworth, Topeka & Southwestern Railway Company delivered the said goods to the defendant, to be delivered at their destination; that said Leavenworth, Topeka

& Southwestern railway was operated by the defendant company. The written agreement set up is as follows:

"LEAVENWORTH, TOPEKA & SOUTHWESTERN RAILWAY COMPANY.

LEAVENWORTH, KAS., STATION, March 31, 1886.

"Will receive the under-noted property, and transport it over the road, and deliver to consignees, or the next company or carriers, if same is going beyond its line of road, for them to deliver at the place of destination of said property, it being distinctly understood that this company shall not be responsible as common carriers for said property beyond its line of road, or while at any of its stations awaiting delivery to such carriers, the company being liable as warehousemen only."

It is alleged that the defendant did not use due care and diligence in transporting the same; that they were delayed and decayed on the road, to the plaintiffs' damage. The second count in the petition alleges the shipment in the same manner, and under a written contract substantially the same, of a car load of onions to the same point. The defendant answered, denying the allegations of the petition, except the written contracts, which are admitted. The case was tried by a jury, and a general verdict for $1,272.77 rendered in favor of the plaintiffs, and judgment was entered accordingly. Special questions were also answered, among which are the following:

"Ques. How long a time transpired in shipping said apples from Topeka to Albuquerque? Ans. About 7 days.

"Q. From the evidence, what appears to the jury to have been a reasonable time, in days, for the shipment of the apples and onions in controversy from Leavenworth to San Francisco? A. About 12 days.

"Q. Is it not a fact that Albuquerque was the western terminus of the defendant's road at the time in question? A. Do not know.

"Q. How many days were consumed by the defendant in transporting the car of onions from Topeka to Albuquerque? A. About 5 days.

"Q. How many days were ordinarily consumed in transporting a car of freight from Topeka to Albuquerque, including the necessary delays at division points and other

necessary stops?   A.  Do not know; have not sufficient data to determine.

"Q.  How much do you find the apples were damaged in value, if any, by reason of delay in transporting them from Topeka to Albuquerque, when they reached Albuquerque? A.  Do not know.

Q.  "Is it not a fact that the defendant, at Albuquerque, delivered the goods in question to the Atlantic & Pacific Railroad Company, one of the connecting lines over which the goods were transported?   A.  Yes."

The evidence shows that the apples were received in San Francisco on April 22d, and the onions on April 27th.   The apples were very badly rotted, and the onions sprouted and many of them were rotten.   They were delivered at San Francisco by the Southern Pacific Railroad Company.   E. H. Davis, a witness called by the defendant, testified that the western terminus of the defendant's road was at Albuquerque, and that it there connected with the Atlantic & Pacific, a separate and independent road.   The defendant company brings the case to this court.

*A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

So far as the evidence in this case goes, the Atchison company was simply a connecting carrier to carry the goods from Topeka to Albuquerque, and no loss being shown to have been occasioned by reason of transportation this distance, no liability is made out.

Again, the contract made with the Leavenworth company was not a through contract, and was at most simply a contract to transport from Leavenworth to Topeka, being the line of the Leavenworth Railway Company, and even if it could be held that the Atchison company was bound by the contract made by the Leavenworth company, the most that could be claimed on plaintiffs' behalf would be that this contract was to transport from Leavenworth to Albuquerque, because it appeared, from the undisputed testimony, that the line of railroad owned and operated by the Atchison company ended at Albuquerque, and there was no evidence given

to show that it owned or operated a line extending beyond this. Now, San Francisco was beyond its line of road, and beyond the line of road of the Atchison company, and therefore the contract, construed most favorably for the plaintiffs, could mean nothing more than a delivery at Albuquerque to the Atlantic & Pacific railroad. Railroad companies are chartered to construct and operate the line of railroad designated in their charters. This is all that the law can require of them. As common carriers, however, they may undertake to transport beyond their line of road, but such a contract cannot be presumed or inferred from loose language; as it is the assumption of an obligation greater than that imposed by the law and the charters, such obligation must be made out clearly and expressly. See *Myrick v. Mich. Cent. Rld. Co.*, 107 U. S. 102. On page 107 of that report it is said:

"The general doctrine, then, as to transportation by connecting lines, approved by this court, and also by a majority of the state courts, amounts to this: that each road, confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."

That case is much stronger than the case at bar. The rule announced in that case is the one which has been adopted by this court. A case similar in all respects to the one at bar is *Berg v. A. T. & S. F. Rld. Co.*, 30 Kas. 561, 563, 564, and cases cited.

The opinion of the court was delivered by

ALLEN, J.: An elaborate brief is filed on behalf of the plaintiff in error, but there is no appearance in this court by the defendants in error. It appears from the plaintiffs' petition that the shipments were made under written contracts, by the

terms of which the liability of the company as a common carrier was limited to its own line of road. There is no attempt to allege or prove any other or different contract from that contained in the shipping bills. Although the jury found in answer to special questions that there was a through contract to transport the onions from Leavenworth to San Francisco, there is neither an averment in the petition nor any evidence in the record to support such finding. In answer to the question as to whether or not Albuquerque was the western terminus of the defendant's road, the jury answered, "We do not know." There was direct and uncontradicted evidence showing that Albuquerque was the western terminus of the defendant's road; that the freight was there delivered to the Atlantic & Pacific, an independent railroad company, and that it was delivered at San Francisco by the Southern Pacific, still another company.

The syllabus of the case of *Berg v. A. T. & S. F. Rld. Co.*, 30 Kas. 561, in which the opinion was written by Mr. Justice BREWER, reads as follows:

" Where a railroad company receives goods for transportation to a point beyond its line upon a special contract in which is no express agreement to transport to such point, but the place is only named as the point of destination, and in which it is expressly agreed that the goods are to be transported over the company's road and delivered in good order to the connecting carrier, and that the company is not to be responsible as carrier beyond its line, and its liability as such is to terminate upon delivery of the goods to the connecting carrier, *held*, (1) that there is no uncertainty or ambiguity in the contract, and that it is clearly only a contract for transportation over its own line and delivery to a connecting carrier; (2) that such contract, being no contract for through transportation to the point of destination, presents no questions of an attempt to limit the common-law liability of the carrier as to anything happening beyond its own line; and (3) that the company transporting over its own line and delivering the goods in safety to the connecting carrier performs its contract and is not liable for any subsequent loss or damage."

That case is directly in point, and decisive of the one before us. Even assuming that the evidence, which is conflicting

and not entirely satisfactory, shows that the Leavenworth, Topeka & Southwestern railroad was operated by the Atchison, Topeka & Santa Fé, and therefore that its contract was binding on the defendant, there is absolutely nothing here showing either an attempt on the part of the defendant to limit by contract its common-law liability as a carrier of goods, nor an agreement to transport plaintiffs' goods to their destination. In fact, the validity of the written agreement is alleged by the plaintiffs, and that written agreement expressly provides that the defendant's liability shall terminate when the consignments are delivered to the connecting carrier. The evidence fails to show any great delay occurring on the defendant's road, or that the apples or onions were injured any in transit to Albuquerque, the cars having reached Albuquerque in five and seven days respectively after shipment. The jury say they do not know, in answer to a question as to whether a large portion of the delay occurred west of Albuquerque. This finding is manifestly unfair, for it is apparent from the other findings that the principal time consumed was after the cars reached Albuquerque. As to the right of railroad companies to limit their liability to what happens on their lines, see also *Myrick v. Mich. Cent. Rld. Co.*, 107 U. S. 102; Laws. Car., §§ 102, 236; Hutch. Car., § 149*b;* and cases cited in *Berg v. A. T. & S. F. Rld. Co.*, supra. There is no evidence showing that the plaintiffs were injured by the negligence of the defendant.

Many questions are discussed with reference to the rulings of the court on the admission of testimony, and also on the instructions. The report of the board of railroad commissioners for the year ending December 1, 1886, which was read in evidence, was not competent testimony as a report, but that part of the report which was certified to by the secretary of the board as a true and correct copy of the report of the defendant company, required by law to be made and filed with the board of railroad commissioners, was competent.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.