## TUBIZE CHATTILON CORPORATION v. WHITE TRANSP. CO.

No. 5113.

District Court, D. Maryland.

Feb. 14, 1934.

John H. Skeen (of Emory, Beeuwkes, Skeen & Oppenheimer), of Baltimore, Md., and Lewis, Adler & Laws, of Philadelphia, Pa., for plaintiff.

Thomas J. Tingley and Francis Key Murray, both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

A motion for a new trial has been made and argued in this case. It has afforded opportunity for both counsel and court to more fully examine and consider the applicable law.

The result of the trial was a verdict for the plaintiff in the amount of $9,193.73 (including interest) for damages for loss of a part of a shipment of 85 cases of rayon delivered by the plaintiff at Hopewell, Virginia, to the defendant for transportation *by motor truck* to Bethlehem, Pa. The defendant is a common carrier of merchandise by motor trucks. The cases of rayon were delivered to the defendant's sub-agent at Hopewell, Va., on April 20, 1932, and the plaintiff was given two receipts therefor, one for 50 cases and one for 35 cases. The receipts were on the printed form of bill of lading called "Uniform Domestic Straight Bill of Lading adopted by carriers in official, Southern and Western territories, March 15, 1922, as amended August 1, 1930." They are in the ordinary form for *railroad* transportation and I understand the form is that prescribed by the Interstate Commerce Commission. See In the Matter of Bills of Lading, 52 I. C. C. 671, April 14, 1919.

The whole shipment of 85 cases was safely carried by the defendant's sub-agent from Hopewell, Va., to Richmond, Va., and there trans-shipped into two separate trucks of the defendant; one containing 60 cases went directly by road to Bethlehem, Pa., and safely delivered its cargo; the other constituting only a partial truck load went apparently with other merchandise through Baltimore to Philadelphia, where the defendant says its terminal station on that route was located, and there unloaded and delivered to a connecting carrier by truck, from whose possession it is said that it was stolen. The defendant's defence to the claim for its loss is based on the legal proposition that it was safely delivered to a connecting carrier and therefore the defendant had no liability for its safe carriage thereafter.

At the trial the view was taken that from all the evidence in the case, including the bill of lading and oral testimony, the defendant had contracted for a through shipment and delivery of the cases of rayon. The motion for a new trial is based chiefly on the legal proposition that the bill of lading is a written contract, which on its face limits the liability of the defendant carrier to safe transportation on its own line and absolves it from loss after safe delivery to a connecting carrier; and that parol testimony is not admissible for the purpose of either adding to or changing or varying the terms of the written contract. The view taken at the trial was that it was at least not clear that the bill of lading did so limit the carrier's liability and that other facts and circumstances in the relations between the shipper and carrier should be looked at to determine what was the actual contract between them. A more extended examination of the law than was possible at the trial satisfies me that the rule adopted was at least not prejudicial to the defendant, and I think is supported by several cases in the Supreme Court of the United States. Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, 31 S. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7 (which is the principal authority on the subject); Michigan Cent. Railroad Co. v. Mineral Springs Manufacturing Co., 16 Wall. 318, 324, 21 L. Ed. 297; Ogdensburg & L. C. Railroad Co. v. Pratt, 22 Wall. 123, 22 L. Ed. 827; Myrick v. Michigan Cent. R. Co., 107 U. S. 102, 1 S. Ct. 425, 27 L. Ed. 325. The federal law is controlling in a case of this kind, which is a question of general jurisprudence. Myrick v. Mich. Cent. R. Co., 107 U. S. 102, 1 S. Ct. 425, 27 L. Ed. 325; 10 C. J. 524.

The conflict between the English and the majority of the American cases (the latter including federal cases) as to whether a carrier is liable for loss on the lines of a connecting carrier seems to be really a conflict between what facts or circumstances will be regarded as satisfactory evidence of a contract for a *through carriage,* on the one hand, or only for proper forwarding by the initial carrier, on the other. Thus in Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, at page 197, 31 S. Ct. 164, 166, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, it is said:

"The general doctrine accepted by this court, in the absence of legislation, is, that a carrier, unless there be a special contract, is only bound to carry over its own line, and then deliver to a connecting carrier. That such an initial carrier might contract to carry over the whole route was never doubted. It is equally indisputable that if it does so contract, its common-law carrier liability will extend over the entire route. * * * The English cases * * * have consistently held that the mere receipt of property for transportation to a point beyond the line of the receiving carrier, without any qualifying agreement, justified an inference of an agreement for through transportation, and an assumption of full carrier liability by the primary carrier. * * * There are American cases which take the same view of the question of evidence thus presented. * * * Upon the other hand, many American courts have repudiated the English rule which holds the carrier to a contract for transportation over the whole route, in the absence of a contract clearly otherwise, and have adopted the rule that unless the carrier specifically agrees to carry over the whole route, its responsibility as a carrier ends with its own line; and that, for the continuance of the shipment, its liability is only that of a forwarder. The conflict has therefore been one as to the evidence from which a contract for through carriage to a place beyond the line of the receiving carrier might be inferred."

The case then proceeds to discuss and hold valid the Act of Congress of June 29, 1906, ch. 3591, 34 Stat. 584, 595, known as the Carmack Amendment to the Hepburn Bill (49 USCA § 20), which, as is well known, imposed liability for loss on any point of the route in interstate commerce, on the initial carrier. See also Roberts, Federal Liabilities of Carriers, vol. I, pp. 683, 686. If the defendant had been a railroad the question could of course not arise as it would have been determined by the Act of Congress, but

it is clear that the Act does not apply to common carriers by motor trucks although operating in interstate commerce. The defendant, therefore, says its liability should be determined by the majority rule in the United States unaffected by this federal statute, no state statute of Virginia or other state in the interstate carriage having been called to my attention.

Coming now to a closer examination of the provisions of the bill of lading, I am not convinced that, as applied to this transaction, it shows the clear limitation of liability contended for. The following provisions are to be particularly noted. The defendant, the White Transportation Company, is named as the carrier. It acknowledges the receipt of the property described—"marked, consigned and destined as indicated below, which said company * * * agrees to carry to its usual place of delivery at said destination, *if on its own road or its own water line,* otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of any or all of said property over all or any portion of said route to destination and as to each party at any time interested in all or any part of said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained, including the conditions on the back hereof, which are hereby agreed to by the shipper and accepted for himself and his assigns."

By the bill of lading the goods were—

"Consigned to R. K. Laros Silk Co. (an agent of plaintiff)
Destination, Bethlehem, State of Penna.
Route ———
Delivering carrier—Truck."

The only contract terms and conditions (printed on the back) which seem to have any possible bearing on the question are:

"Sec. 1 (a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided:

"Sec. 2 (a) No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination."

Several points are to be specially noted as follows: The bill of lading nowhere contains the provision which was in very general use in bills of lading prior to the adoption of the Carmack Amendment, to the effect "that no carrier shall be liable for any loss or damage not occurring on its own line." The absence of this express exemption from liability is, I think, not without significance, even though a motor truck company is not by law subject to the effect of the amendment. The clause referred to was evidently left out of the provisions of this uniform bill of lading, intended for railroad carriage, in consequence of the amendment. See In the Matter of Bills of Lading, 52 I. C. C. 682. Another point to be noticed is that there is nothing in the bill of lading to show affirmatively that the place of delivery was beyond the route or line of the defendant. It is a matter of common knowledge that in railroad carriage where this condition exists the line in the bill of lading beginning with the word "Route" customarily contains the railroad route by reference to the names of the several connecting carriers. And this point is perhaps emphasized by the matter in the next line reading: "Delivering carrier—Truck." Therefore, if we are to be strictly limited in determining what was the contract of the parties to the contents of the bill of lading, it seems to indicate on its face (in connection with the further facts appearing that the freight was prepaid through to destination) that the whole carriage was to be by the defendant, as there is no indication of a connecting carrier for all or any part of the shipment.

However, defendant's counsel call attention to the above quoted clause which described the contractual obligation as follows: "Agrees to carry to its usual place of delivery at said destination, if on its own road or its own water line, otherwise to deliver to another carrier on the route to destination." It is said that this phrase limits the liability by showing that the only obligation is to deliver to another carrier, if the destination is at a point beyond the defendant's ordinary route. This contention meets several difficulties.

In the first place, as a matter of construction, it seems highly doubtful that the Interstate Commerce Commission, in approving this form of bill of lading under which the initial carrier by the Carmack Amendment was liable for the through shipment, could have contemplated that the particular clause was operative to release the initial carrier from liability (except for the Carmack Amendment), and as heretofore noticed, the omission from the bill of lading of the express

exemption from liability for default of a connecting carrier, is significant.

Again in order to maintain the point at all the defendant is obliged to offer parol testimony of facts not appearing on the face of the bill of lading to show as a matter of fact that the destination was not on the defendant's "own road" (it not being contended that the defendant had any water line). The evidence offered by the defendant in this connection was that the defendant did have a motor route which ran from Richmond through Baltimore to Philadelphia, there terminating, as the nearest point to Bethlehem; and that the plaintiff's agent was aware of this fact.

Defendant's counsel on the motion for a new trial calls attention to the provisions of the Maryland statutes (Bagby's 1929 Supp. to Maryland Code, art. 56, §§ 258–262, as amended by chapter 282 of the Acts of 1933), providing for annual franchise or license fees to be paid by motor vehicles used in public transportation of merchandise or freight operating over Maryland roads or fixed routes, and says that the defendant has complied with this law and thus has an established route through Maryland from Richmond to Philadelphia. However, this was not developed in the proof at the trial and is not properly before me for consideration. But on the other hand there was testimony that the defendant frequently, if not customarily, transported other shipments by the plaintiff directly by another route (than via Philadelphia) to Bethlehem in its own trucks; and in fact so transported the major portion of this shipment. And furthermore, although the defendant's agent did know that at times some merchandise shipped might be sent by way of Philadelphia and thence forwarded by another carrier, it insisted that the defendant should insure against liability for loss while in the possession of the connecting carrier. It is thus apparent that to establish its contention the defendant is obliged to resort to testimony outside of the bill of lading itself, at least to show the circumstances and conditions, and as the bill of lading does not show that there was to be a connecting carrier it is necessary for the defendant to bring home to the plaintiff by parol testimony knowledge of the facts that there would be a connecting carrier. 10 C. J. 517, § 840. But the same testimony so resorted to by defendant also shows insistence by the plaintiff of the defendant's assumption of liability over the whole route in those cases, if any, in which there was delivery to a connecting carrier.

Then again it may be observed that the limitation of liability, contended for by the defendant, from the wording of the bill of lading contained in the clause "if on its own road" is literally inapplicable to the defendant's situation. Unlike a railroad carrier, it had no fixed road or terminus, as it was entirely free to use any public roads from Virginia to Bethlehem, Pa., and in fact did use a road other than via Philadelphia for the major part of the shipment. Defendant's counsel urges that this expression in the bill of lading has been held in several cases to be a sufficient limitation of liability. Reference is made to the annotation upon the subject in 31 L. R. A. (N. S.) p. 58, from which it will be found, however, that the cases on the particular point are in conflict. And on an examination of a number of cases particularly cited by defendant's counsel it appears that the limitation of liability was more expressly stated than in this bill of lading. See Teall v. Sears, 9 Barb. (N. Y.) 317; Inhabitants of Plantation No. 4 v. Hall, 61 Me. 517; McEacheran v. Mich. Cent. R. Co., 101 Mich. 264, 59 N. W. 612; Hewett v. Chicago, B. & Q. R. Co., 63 Iowa, 611, 19 N. W. 790. Compare St. John v. Van Santvoord, 25 Wend. (N. Y.) 660.

My conclusion is that if the defendant's obligation is to be found only in the bill of lading, then its claim of exemption from liability in this case is not established thereby. If, on the other hand, reference in aid of construction can properly be made to the other facts and circumstances in the case to determine the real contract between the parties, then it affirmatively appears as a fact that it was the intention and agreement of the parties that the defendant should, as carrier, have liability for the shipment through to ultimate destination. As indicated in the oral opinion at the trial, I also think that the so-called American majority rule which, prior to the Carmack Amendment, exempted the initial carrier from liability for loss beyond its lines on the grounds of public policy, and which was adopted in connection with railroad transportation, should not on the grounds of public policy be applied to carriers of goods by motor truck in view of the different conditions under which they operate.

The motion for a new trial is, therefore, overruled.