AMERICAN AIR LINES, INC., Petitioner

v.

JNO. L. MILLER AND FAY MILLER, DOING BUSINESS AS CENTEX TURKEY HATCHERY, Respondents

No. A-8503.   Decided May 9, 1962
356 S.W. 2d 771

ASSOCIATE JUSTICES GRIFFIN and SMITH dissenting.

*Buck & Buck,* by *Robert P. Clines,* Fort Worth, for American Airlines, Inc.

*Lawrence L. Bruhl,* Llano, and *L. Hamilton Lowe,* Austin, for *John L. Miller.*

*Arthur P. Bagley* and *John C. Foschee,* Austin, for Railway Express Agency.

ASSOCIATE JUSTICE HAMILTON delivered the opinion of the Court.

Respondents John L. Miller and Fay Miller, doing business as Centex Turkey Hatchery, sued petitioner, American Airlines, Inc., and respondent Railway Express Agency to recover damages sustained to a shipment of 3,000 turkey poults. In a suit before the trial court judgment was rendered for respondents John L. Miller and Fay Miller against American Airlines, Inc., and Railway Express Agency jointly and severally in the amount of $1010.90. The Court of Civil Appeals affirmed as to the judgment against American Airlines, Inc., and reversed and rendered as to Railway Express Agency. 346 S.W. 2d 905. American Airlines, Inc. and the Millers filed applications for writ of error.

The Millers delivered the poults to American in Fort Worth at 8:40 p.m., April 22, 1957, for shipment to the Idaho Poultry Company at Boise, Idaho. At the time American received the

poults it issued to the Millers an air-freight uniform air bill reciting:

| "Destination Airport City | Consignee's No. |
| --- | --- |
| AT PORTLAND, OREGON | |

Routing: Airline Routing Applies Unless Shipper Inserts Specific Routing Here

"* * * *

"It is mutually agreed that the goods herein described are accepted in apparent good order (except as noted) for transportation as specified herein, subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law. Said classifications and tariffs, copies of which are available for inspection by the parties hereto, are hereby incorporated into and made part of this contract.

"* * * *

| No. of Pieces | Description of Pieces And Contents | Weight |
| --- | --- | --- |
| 30 | Boxes Broadwhite Turkey Poults | 450# |
| | (Live Baby Poults 100 Per Box) | |
| | Instructions to Carrier | |

Leave Amon Carter Field via American Air Frt. Arrive at Portland, Oregon airfield—ADVISE Railway Express to pick up, truck direct to Boise, Idaho."

American carried the poults to Los Angeles, California, where they were delivered to The Flying Tiger Line, Inc., another air carrier, not a party to this suit, at 7:58 a.m. on April 23, 1957. The Flying Tiger Line, Inc., carried the poults to Portland Oregon, where they were delivered to Railway Express at about 6:30 or 7:30 a.m., April 25. Railway Express took the poults by train to Huntington, Oregon, 387 miles distant, and from there Railway Express took them by truck to Boise, one hundred miles distant.

Within approximately forty-five minutes after the poults were delivered to Railway Express one of its employees said his attention was called to the shipment by the odor from them, and that upon opening the boxes he found lots of the turkey poults

already dead and many were in a dying condition. About 1838 poults died before delivery and 600 afterwards.

Plaintiffs' expert witness testified that in his opinion the cause of the death of the poults was that "they could have either been too hot or too cold, either one—too hot or too cold * * * or they could have been on the road too long." He further testified that if the poults had died and were dying in large quantities at the time the Railway Express received them it would indicate that the cause of their death occurred before that time. The trial court found from the evidence that turkey poults are endowed by nature to live without food or water for seventy-two hours after hatching.

In holding American Airlines liable the Court of Civil Appeals said that American contracted for transportation of the turkeys beyond Los Angeles and elected to treat connecting carriers as its agents. With this we cannot agree.

■ The Court of Civil Appeals correctly held that petitioner is subject to the Civil Aeronautics Act of 1938 as amended, and was required to file its tariff with the Civil Aeronautics Board. 49 U.S.C.A., Sec. 483. As is recited in the air-freight uniform air bill, this tariff became a part of the contract between shipper and carrier. The tariff of American Airlines was introduced in evidence, and contains the following:

"The carrier shall not be liable for loss, damage, deterioration, destruction, theft, delay, default, mis-delivery, non-delivery or any other result not caused by the actual negligence of itself, its agents, or employees, acting within the scope of their authority, or not occurring on its own line or in its own service or for any act, default, negligence, failure or omission of any other carrier or any other transportation organization."

This tariff shows The Flying Tiger Line, Inc., is another carrier adopting the same tariff.

The Court of Civil Appeals, while recognizing the tariff as part of the contract, says that this does not help American Airlines for the reason that when American carried the poults to Los Angeles and there delivered them to The Flying Tiger Line, Inc., for delivery to Railway Express at Portland it adopted The Flying Tiger Line, Inc., as its agent to transport the poults to Portland. It cites Gulf, C. & S. F. Ry. Co. v. Hines, (Texas Comm. App.) 250 S.W. 1013, Atchison, T. & S. F. Ry. Co. v.

Word, 159 S.W. 375, error refused, and Atlanta C. & L. Ry. Co. v. Riverside Mills, 219 U.S. 186, 31 S. Ct. 164, 55 L. Ed. 167, 31 L.R.A. (N.S.) 7. These cases involve railroads as carriers. They are subject to the Carmack Amendment, which provides in effect that a receiving carrier, in spite of any stipulations to the contrary, shall be deemed, when it receives property in one state to be transported to a point in another state, involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent and to have incurred carrier liability throughout the entire route, with the right to reimbursement for a loss not due to his own negligence. Congress has not seen fit to make the Carmack Amendment applicable to airline carriers, so therefore those cases are not in point.

This court, in the case of A. J. Tebbe & Sons Company v. Brown Express, 161 Texas 457, 341 S.W. 2d 642, deals in detail with contracts for transport of goods beyond the facilities of a carrier in cases where the Carmack Amendment is not in force, such as this one. We there recognized (page 645) the majority rule in America to be that the mere acceptance of goods consigned to a point beyond the line of the initial carrier is not enough, but the initial carrier's liability ends when the shipment is delivered to the connecting carrier unless the evidence affirmatively discloses an agreement to carry over the whole route. See: Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 31 S. Ct. 164, 55 L. Ed. 167; Michigan Central R. Co. v. Mineral Springs Mfg. Co., 16 Wall. 318, 21 L. Ed. 297; Ogdensburg & L. C. R. Co. v. Pratt, 22 Wall. 123, 22 L. Ed. 827; Hunter v. Southern Pac. Ry. Co., 76 Texas 195, 13 S.W. 190; Gulf, C. & S. F. Ry. Co. v. Jackson & Edwards, 99 Texas 343, 89 S.W. 968; Michigan Central R. Co. v. Myrick, 107 U.S. 102, 1 S. Ct. 425, 429, 27 L. Ed. 325.

■ In the instant case we not only do not have any specific agreement that American will carry over the whole route, but the tariff filed by American with the Civil Aeronautics Board says specifically it will not be liable for any act, default, negligence, failure or omission of any other carrier or any other transportation organization. The record in this case discloses that American delivered the poults to The Flying Tiger Line, Inc., in Los Angeles within less than twelve hours after receiving them, and received from The Flying Tiger Line, Inc., a transfer manifest showing that the poults were accepted in an undamaged condition. John L. Miller, one of the plaintiffs below, testified that the poults were delivered in Los Angeles within a reasonable time and that he knew of no negligence on the part of American in its handling

of the shipment. We therefore hold that American Airlines is not liable for the damage to the poults.

■ In regard to the liability of Railway Express for the damage to the shipment of poults, the evidence is conclusive that whatever happened to the poults to cause the damage must have happened prior to the time they were received by Railway Express. From that time on the evidence shows that Railway Express did everything it could have done to prevent further damage. It is shown that at all times a man who was experienced in the handling of live shipments of poultry was caring for the shipment, and the record shows in detail what he did to try to prevent any further damage. We agree with the Court of Civil Appeals that such evidence exonerates Railway Express from any negligence which may have caused the damage.

We reverse the judgment of the Court of Civil Appeals holding American Airlines liable and render judgment in its favor. We affirm the judgment of the Court of Civil Appeals holding that the respondents take nothing as against Railway Express Agency.

ASSOCIATE JUSTICES GRIFFIN and SMITH dissenting.

Opinion delivered May 9, 1962.