MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. MARRS McLEAN.

Decided April 7, 1909.

**1.—Railway—Requisition for Cars—Instructions to Carrier.**

Testimony of the shipper that he gave instructions to the commercial agent of the railway company to ice the cars before sending them out to be loaded, authorized a finding to that effect although the written requisition for the cars contained no order for ice, and the records covering the movement of the cars showed that they were ordered without ice.

**2.—Same—Perishable Goods—Furnishing Cars.**

Where the railway company knew that the cars were ordered for the shipment of perishable produce, it was its duty to furnish cars suitable and in proper condition for the transportation of such goods.

**3.—Same—Damages—Defective Cars.**

If a railway company undertakes to carry perishable property in cars specially adapted to preserve it, it will become responsible for any defect in the cars resulting in injury to the property.

**4.—Same—Refrigeration.**

The duty of the railway company to furnish suitable cars when it accepts perishable property for transportation, extends to proper refrigeration according to established custom.

**5.—Same—Damages—Negligence—Liability.**

The fact that the cabbages had just been cut from their stalks, were sound, firm and hard when shipped, and decayed in transit and were badly damaged when they reached their destination, were circumstances tending to show either that the cars were not properly constructed for the carriage of such goods, or that they were not properly refrigerated, and these circumstances were of themselves sufficient to warrant a finding that the cars were either not properly constructed or refrigerated; and a finding of either was sufficient to render the railway company liable for the damage to the produce.

**6.—Contributory Negligence—Damages to Perishable Goods—Notice that Cars are Unsuitable.**

Although a shipper may discover before the loading or departure of the car that is not suitable for carrying perishable produce, he will not on that account be deemed guilty of contributory negligence, or of having assumed the risk, where he has no means or opportunity of relieving himself of the situation.

**7.—Evidence—Special Damages—Harmless Error.**

Where there was no allegation by the plaintiff that the carrier had notice that the shipment was made to fill a contract of sale at any special price, there could be no liability for special damages based on such contract price, and a question to the plaintiff intended to elicit the bargain price was improper; but the trial being before the court without a jury, and it being apparent from the findings of fact and conclusions of law that the damages were estimated from the market value at destination, the carrier was not prejudiced.

**8.—Same—Measure of Damages.**

Where the measure of damages was the difference in the market value of the goods in the condition in which they should have reached destination and their market value in the damaged condition in which they arrived, it was necessary and sufficient for the shipper to prove that the sum realized from the sale at destination was the cash market price in their damaged condition; but the carrier could not complain that he went further and testified that such sum was the best price obtainable.

**9.—Judgment—Measure of Damages.**

Where the judgment may have been for what the goods were worth at the point of origin, but the findings of the trial court showed that they would have been worth that much or more on the market at destination had they arrived there in the condition they would have been in but for the carrier's negligence, the carrier had no ground to complain of the amount of the damages awarded.

ON REHEARING.

**10.—Damages—Allegation and Proof—Negligence—Variance.**

Where the shipper alleged that damage to a part of the shipment was caused by delay, and the court found there was no delay, and that the damage resulted from the failure of the carrier to ice the car, there was a variance, and a recovery was properly denied.

Appeal from the District Court of Jefferson County.  Tried below before Hon. W. H. Pope.

F. J. Duff, Coke, Miller & Coke, and Thomas & Rhea, for appellant.

W. D. Gordon and Thos. J. Baten, for appellee.

NEILL, Associate Justice.—This suit was brought by Marrs McLean against the Missouri, Kansas & Texas Railway Company of Texas and the Gulf & Interstate Railway Company of Texas to recover damages to nine shipments of cabbage made by the firm of McLean Bros. from various points on the line of the Gulf & Interstate Railway Company to various destinations; some being intrastate and others interstate shipments, and are numbered from one to nine in plaintiff's petition.

The plaintiff alleged that he had succeeded to the rights of McLean Bros., a firm composed of himself and Jack McLean; that all the cabbages in the several shipments were in good condition when shipped, and were transported on through bills of lading with instructions thereon to ice the cars at Galveston, and to re-ice them whenever necessary; that defendants failed to ice the cars in shipments numbered one to eight, and that by reason thereof the cabbages arrived at destination in a damaged condition, to plaintiff's damage, etc. That as to shipments numbered three and seven, in addition to the cars not being properly iced the cars in which the shipments were made were not properly constructed, and that plaintiff thereby suffered loss. The petition alleges as to each of the several shipments that when made, the cabbages had been bargained to the respective consignees at a stipulated price, and then avers the difference in the value in their damaged condition at destination and the price at which they had been bargained to be sold. It then avers: "That the prices at which the above mentioned lots and parcels of produce were bargained as above alleged were the respective cash market prices of such produce respectively at the times and places aforesaid, and that the same could have been sold but for the deterioration and damage caused as aforesaid at such prices in the open market; and that the amounts received therefor in the damaged condition of the respective cars of produce was the full market price therefor as alleged in respect to each specific shipment." The damages prayed for were $2,145.

The Missouri, Kansas & Texas Railway Company answered by a general denial and pleaded specially that the shipment originated on the line of its codefendant; and that the bills of lading issued by it provided that each line should be responsible only for damages occurring on its own line, and in no event would it be liable for any damages except those done in its possession. It also pleaded contributory negligence.

The case was tried without a jury and resulted in a judgment in favor of plaintiff for $2,046.80 against the Missouri, Kansas & Texas Railway Company, and against plaintiff in favor of the other railroad company.

The trial judge filed conclusions of fact and of law which are as follows:

*Findings of fact.*—"I. I find that McLean Brothers (Marrs McLean,

the plaintiff, being now the successor in interest of said firm) shipped the nine carloads of cabbages substantially as alleged in the plaintiff's petition in this case from the points on the Gulf & Interstate Railway Company's line running between Beaumont and Bolivar, making deliveries of each car after being loaded to the said Gulf & Interstate Railway Co., which transported the same across the bay to Galveston where said cars were delivered to the connecting carrier, Missouri, Kansas & Texas Railway Company of Texas, for transportation to the points of destination, as alleged in each specific shipment.

"II.  I find that the plaintiff, and said firm of McLean Brothers, made requisitions on the defendants for suitable refrigerator cars to be iced before loading and that when said requisitions were made the defendant, Missouri, K. & T. Ry. Co., undertook to furnish the same to be promptly transported to the loading station to receive the cargo. That the said McLean Brothers thereupon notified the growers from whom said cabbages were obtained to have said cabbages cut and ready to be loaded as soon as the train coming from Galveston in the afternoon, leaving Bolivar at about 4 p. m. brought said cars, and that said cabbages were so cut and prepared to be loaded in said cars immediately upon arrival at loading station.

"III.  I find that said McLean Brothers loaded each car with first-class quality of cabbage, hard, green and firm, and that each car was turned over to the defendants with the cabbages in first-class condition with instructions to the defendants written in the bills of lading to ice at Galveston and re-ice when necessary.

"IV.  I find that said cars, after being loaded in a proper manner, were expeditiously transported by the Gulf & Interstate Railway Company of Texas, and delivered to and received by its codefendant, the Missouri, Kansas & Texas Railway Company of Texas, at Galveston.

"V.  I find that the Missouri, K. & T. Railway Company of Texas failed to keep said cars properly iced from the time it received the same to their destination, and that this caused the produce to rot and decay in quantity and manner as set up in the statements of each shipment in the plaintiff's petition, and that the Missouri, K. & T. cars described in the petition were not properly constructed so as to keep the contents in proper refrigeration even if the same had been kept iced in transit, and that the plaintiffs were not at fault in using said cars, and that this failure of refrigeration on the part of the defendant, Missouri, K. & T. Ry. Co. of Texas, caused the produce to decay as described in plaintiff's petition.

"VI.  I find that the cabbages were all the property of McLean Brothers while in transit and that the prices f. o. b. shipping point were simply a price-basis at which said produce was to be delivered to the consignee subject to the right of the latter to receive or reject the same upon inspection.

"VII.  I find that the market prices of each respective shipment at the point of destination was in excess of said price basis f. o. b. shipping point, and if said produce had arrived at the respective points of destination in good condition, which it would have done if it had been properly refrigerated by the defendant Missouri, K. &

T. Ry. Co., that it would have brought upon the market in excess of the amounts specified as the market price in such condition in each specific shipment. On the contrary the amounts realized, as stated in said plaintiff's petition, were all that said cabbages were worth upon the market in the condition in which said cars arrived respectively as detailed in said petition.

"VIII. With reference to shipment No. 9, I find that four or five days was a reasonable time within which to transport said produce from the shipping point to its destination at Kansas City, Mo., and that the loss on said shipment amounting to about 3,900 pounds in shrinkage occurred as therein alleged, and I find that the value of said shrinkage is as alleged in said petition, but I find that said car No. 9 was kept properly refrigerated en route by the defendant and that such shrinkage was not due to any fault of the defendant in the refrigeration.

*Conclusions of law.*—"I. I conclude, as a matter of law, that the plaintiff is not entitled to recover of the defendant, Gulf & Interstate Railway Company of Texas, but that the plaintiff is entitled to recover of the Missouri, Kansas & Texas Railway Company of Texas, by reason of its negligence, the sum of $2,046.80 with six percent interest from August 14, 1907, until paid.

"II. I conclude, as a matter of law, that there is a variance between the allegations and proof concerning shipment No. 9, and that the plaintiff is not entitled to recover for that shipment.

"III. I conclude, as a matter of law, that the plaintiff, or the firm of McLean Brothers, was not guilty of contributory negligence, but that the defendant, Missouri, Kansas & Texas Railway Company of Texas, was guilty of negligence which resulted in the damages to the shipments of cabbages as alleged in plaintiff's petition, except as to shipment No. 9."

The Missouri, Kansas & Texas Railway excepted to all the findings of fact and of law, and the plaintiff excepted to the refusal of the court to award him damages to shipment No. 9.

The first assignment complains of the second finding of fact, in finding that plaintiff ordered refrigerator cars to be iced before loading, on the ground that it is contrary to the evidence in that the written requisition and the records covering the movements of the cars in Galveston to the Gulf & Interstate Railway Company show indisputably that the cars, with one or two exceptions, were ordered without ice. The fact that the records referred to in the assignment show that the cars were sent out without ice, does not tend to disprove the finding of the court; nor does the failure of the written requisition for the cars to contain an order for ice, tend to show that ice was not otherwise ordered to be sent out with them. The testimony of the plaintiff is to the effect that he instructed appellant's commercial agent at Galveston to ice the cars before sending them out to be loaded. His testimony is: "He" (Fontaine, appellant's commercial agent) "had positive instructions from us that we wanted the cars sent out with ice, and not sent without it at all—not to send them at all unless he could send them with ice." Besides, the appellant knew

that the cars were ordered for the shipment of cabbages and it was its duty to furnish cars where they were required suitable and in proper condition for the transportation of such goods. (2 Hutc., Car. (3d ed.), sec. 505; Trout v. Gulf, C. & S. F. Ry. Co., 111 S. W., 220.)

The second assignment assails the fifth finding of fact in finding that the Missouri, Kansas & Texas Railway Co. failed and refused to keep the cars iced and that such failure caused the produce to rot; in finding that cars 3143 and 3135 were not properly constructed so as to keep the cabbages in proper refrigeration, even if said cars had been properly iced in transit; and in finding that plaintiff was not guilty of contributory negligence in loading cars as he did. If a common carrier undertake to carry perishable property in cars specially adapted to preserve it, it will become responsible for any defect in the cars resulting in the injury of the property. And under modern methods in the case of carriers by rail, the duty of a carrier where he accepts perishable property for transportation to provide suitable cars extends to proper refrigeration according to established custom. (Johnson v. Toledo, S. & M. Ry., 133 Mich., 596, 95 N. W., 724, 103 Am. St. Rep., 406; New York, P. & N. Ry. v. Cromwell, 98 Va., 227, 35 S. E., 444, 49 L. R. A., 462, 81 Am. St. Rep., 722.) The facts that the cabbages had just been cut from their stalks, were sound, firm and hard when shipped, and decayed in transit and badly damaged when they reached their destination, are circumstances tending to show either that the cars were not properly constructed for the carriage of such goods, or that they were not properly refrigerated. These circumstances were of themselves sufficient to warrant the court in finding, at least, the cars were either not properly constructed or refrigerated. A finding of either would be sufficient to render appellant liable for the damage to the produce.

Although a shipper may discover before loading or the departure of the car that it is not suitable for carrying cabbages, or other like perishable goods, he will not on that account be deemed guilty of contributory negligence, or of having assumed such risk, where he has no means or opportunity of relieving himself of the situation.

In a case like this, where the cabbages had been purchased and gathered by the shipper from various farms in view of immediate shipment on cars the defendants had agreed to furnish suitable for the purpose, the shippers, even though they may have known the cars were not of the proper kind or iced as required, had either to ship them at the risk of their decaying in transit, or to let them lie and rot at the place where they were carried for shipment; for, as they had no means of preserving them, the cabbages would certainly decay if they were not shipped. This condition of things was brought about by the railroad's breach of its obligation to furnish suitable cars properly refrigerated. And it, rather than plaintiff, should be held liable for the damages consequent on loading the goods upon the cars it furnished for that purpose.

As the assignments just disposed of are the only ones that attack any of the trial judge's findings of fact (and only the second and fifth) we adopt and make such findings our own.

The fourth assignment complains of the trial court's first conclusion of law, upon the ground that it is wholly unsupported by the evidence. The court's seventh finding of fact, which is unassailed by any assignment of error, furnishes a complete predicate for the conclusion of law questioned by this assignment. The correctness of the principle of law involved in the conclusion, not being assailed by the assignment, and it being based upon an unquestioned finding of fact, the assignment of error is overruled.

The fifth assignment of error complains of plaintiff's counsel having been permitted to ask him this question: "Now I will ask you whether or not you know of your own knowledge as to the amounts for which these cars, set up in the petition, were bargained as alleged," over defendant's objection that it was incompetent, in that plaintiff had not alleged that the defendant had notice that the shipments or any of them were made to fill a contract of sale at any special price, and that in the absence of such notice defendants were not liable for special damages. The objection to the question embodies a correct principle of law, and evidence countervailing it should not be received. But, as the case was tried before the court without a jury, and it is apparent from its findings of fact and conclusions of law that the damages were estimated from the market value of the goods at destination and not from a price bargained for in advance of the shipment, it is evident that defendant was not prejudiced by the question. This also disposes of the sixth assignment, which complains of a similar question.

The testimony of the witness, R. B. Cochran, that $158.15, realized from the sale at destination of a certain carload of the cabbages, was the cash market price in their damaged condition and that they were sold for the best market value obtainable, was certainly admissible on the issue of damages. (St. Louis, I. M. & S. Ry. v. Boshear, 108 S. W., 1032, 102 Texas, 76.) While the "best price obtainable" is not necessarily the "market price," which ordinarily is to be taken in measuring the damages, yet when it is shown in a case where the consignee or owner sells the goods at destination at their market price and that such price was the best price obtainable, we can not perceive any reason for the carrier's complaining. If the price actually obtained for the sale of the goods had been in excess of their market value, the carrier would be entitled to have the price so received considered in estimating the damages, rather than the market value. Hence, it was proper to show that the sale was not only at their market value, but for the best price obtainable, in order to negative the idea that a better price could have been obtained than the market price. This, however, though proper, was unnecessary. All required was proof that the price obtained was the market value.

The ninth assignment is based upon the erroneous assumption that the court based its judgment on the market price of the goods at the point of origin of the shipment, and not for the market value of the goods at destination had they not been damaged by defendant's negligence. Though the judgment may have been for what the goods were worth at the point of origin, yet, as the finding of the trial court shows that they would have been worth at least that much, and prob-

ably more, on the market at destination had they arrived there in the condition they would have been in but for defendant's negligence, the defendant has no ground to complain of the amount of damages awarded. There is no error in the judgment, and it is affirmed.

*Affirmed.*

### ON APPELLEE'S MOTION FOR REHEARING.

In this motion it is urged that we erred in not sustaining appellee's cross-assignment of error, which complains of the trial court's second conclusion of law. The variance consisted in this, that the allegations charged that the damage was caused from delay in transportation, while according to the court's finding of fact there was no such delay —four or five days being a reasonable time for transportation to destination, the shipment having arrived there within that time—consequently no damage could accrue from the alleged cause, but it arose from defendant's failure to keep the car properly refrigerated, which was not alleged. Therefore the motion is overruled.

*Overruled.*

Writ of error refused.