Anthony M. Fox et al., Plaintiffs in Error, v. Canadian Pacific Railway Company, Defendant in Error.

## Gen. No. 34,500.

Heard in the third division of this court for the first district at the October term, 1930. Opinion filed March 11, 1931.

J. V. De Laney, for plaintiffs in error.

Winston, Strawn & Shaw, for defendant in error; Frank H. Towner and Fred J. McManus, of counsel.

Mr. Presiding Justice Wilson delivered the opinion of the court.

This was an action in assumpsit brought by Anthony M. Fox, trading as Peter Fox Sons Company, against the Canadian Pacific Railway Company, a corporation. A jury was waived and the cause tried by the court resulting in a finding in favor of the defendant and judgment entered on the finding. From this judgment an appeal was taken to this court.

From the facts it appears that certain dressed turkeys were delivered to the defendant at Saskatoon, Canada, December 12, 1922, for transportation by the defendant, and certain connecting carriers, to the City of New York. The defendant corporation owns certain lines in the United States, but none of these was used for the purpose of transportation of the shipment in question. On December 20, 1922, the shipment of turkeys was delivered at Aberdeen, Canada, by the Canadian Pacific Railway Company, the initial carrier, to the Toronto, Hamilton & Buffalo Railroad, the next carrier on the line of transportation to New York. It later came into the hands of the Delaware, Lackawanna & Western Railroad, which transported the same from Black Rock in the United States to New York City. The turkeys were intended for the Christmas trade, but arrived late on the 23rd of December, 1922, and, as December 24th was Sunday, they were sold after Christmas and it is claimed at a greatly reduced price.

The following stipulation of facts was entered into between the parties at the trial: that the parties executed a contract covering the transportation of such shipment approved by the Board of Railroad Commis-

sioners of Canada; that no part of the loss, damage or delay occurred while the shipment was in the possession of the defendant; that all of the service performed on said shipment by said defendant was performed within the Dominion of Canada; and that the laws, statutes and decisions of Canada might be referred to with the same force and effect as if those said laws had been properly proven by competent testimony.

Proof was made as to the market value of the shipment in New York. The contract of carriage issued by the defendant company, among the conditions on the back, provides:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the goods at the place and time of shipment under this bill of lading . . . whether or not such loss or damage occurs from negligence." By the stipulation of the parties, it is agreed that no part of the loss, damage or delay occurred while the shipment was in the possession of the defendant.

Plaintiff in error insists that the contract of carriage was an agreement for transportation from Saskatoon, Canada to New York City, and further that even though it were not considered a through shipment, nevertheless, the defendant was liable as an initial carrier under the Interstate Commerce Act of the United States and particularly under sections 1 to 20 inclusive of this act. Section 20 provides:

"Any common carrier, railroad or transportation company subject to the provisions of this act, receiving property for transportation . . . from any point in the United States to a point in an adjacent foreign country, shall issue a receipt or bill of lading and shall be liable to the lawful holder thereof, for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which said property may be delivered or over

whose line or lines such property may pass within the United States or within an adjacent foreign country . . . and no contract, receipt, rule, regulation or other limitation of any character whatsoever, shall exempt such common carrier, railroad or transportation company from liability hereby imposed.''

In support of the position of plaintiff in error, we are referred to the case of *Galveston, Harrisburg & San Antonio Ry. Co. v. Woodbury,* 254 U. S. 357. From the facts in that case it appears that the plaintiff Woodbury purchased a ticket from the town of Timmins in Ontario, Canada, over a Canadian railroad and by connecting carriers to El Paso, Texas. In the course of transportation over the railroad of one of the connecting carriers in Texas, a trunk belonging to plaintiff was lost. It was insisted in that case by the defendant that it was not bound by the Interstate Commerce Act, particularly that part applicable to the regulation of commerce, as the contract was made in Canada. The Supreme Court of the United States held that the test of the application of the Act was not the direction of the movement, but the nature of the transportation as determined by the field of the carrier's operation. They held that a proper construction of the Act meant transportation by rail from a foreign country to the United States as well as from the United States to a foreign country. We are free to confess that this construction is not clear to us nor do we feel that the Act was so ambiguous as to need any construction, but the decision of the United States Supreme Court on a federal enactment is final and binding on courts of the various states. However, in our opinion, the question resolves itself in the case at bar as to whether or not the contract constituted a contract of through shipment. The bill of lading issued by the Canadian Pacific Railroad Company, provides on its face that it is issued and received subject

to the classifications and tariffs in effect on the date of issue of the bill of lading; that the shipment was received at Saskatoon in good order; that "said company agrees to carry to its usual place of delivery at said destination, if on its road otherwise to deliver to another carrier on the route to said destination."

There is nothing on the face of the bill of lading issued by the defendant, which contracts to carry direct to the City of New York. On the contrary, the carriage of shipment provides that the company shall carry it to its usual place of destination, if on its road, otherwise to deliver to another carrier on the route to said destination. The defendant did deliver to another carrier on the route to destination as it contracted to do. The facts take the case out of the ruling of the Supreme Court in the case of *Galveston, Harrisburg & San Antonio Ry. Co. v. Woodbury, supra.*

A case very much in point is that of *Watson v. Canadian Pac. Ry. Co.,* 237 Ill. App. 478. In that case plaintiff sued to recover damages claimed to have been sustained by reason of the failure of the defendant Canadian Pacific Ry. Company to transport seven carloads of cattle from Calgary, Canada, to Chicago, Illinois. It appears that the contract of shipment was contained in and was part of defendant's tariffs on file with the Board of Railroad Commissioners of the Dominion of Canada, which provided that if shippers made shipments subject to the terms and provisions of the contract, they would be transported at a rate of freight lower than would be charged if the shipment were not transported subject to the provisions and conditions of the contract. It appeared also in that case that none of the loss or damage claimed by the plaintiff occurred on the defendant's line. It was contended, however, that under the contract entered into the services were to be partially performed in the United

States and that the defendant was, therefore, liable as the initial carrier under section 20 of the Interstate Commerce Act. In support of this position plaintiff cited the case of *Galveston, Harrisburg & San Antonio Ry. Co. v. Woodbury, supra.* The court in the *Watson* case held, however, that the facts in the *Watson* case did not bring it under the holding in the *Woodbury* case, as it was apparent from the contract that it was only a contract to deliver to a connecting carrier. The court in its opinion says:

"We think the language of section 20 of the Interstate Commerce Act in this respect is not materially different from that employed in section 1, and that there would be much force in plaintiff's argument if it appeared from the record that part of the services agreed to be rendered by the defendant was to be performed in the United States as plaintiff contends. While plaintiff in his declaration alleged that the defendant agreed to transport the cattle from Calgary, Canada, to Chicago, the plea traverses this allegation and sets up that the defendant's agreement was not to transport the cattle to Chicago, but to deliver them to a connecting carrier as agent for plaintiff in Canada; that it did so deliver the cattle to such carrier and that it did not perform or agree to perform any services in the United States."

Under our holding in this case, that the contract was not a contract for through shipment, it necessarily follows that the provision of the bill of lading, providing that damages shall be computed on the basis of the value of the goods at the place and time of shipment, is controlling, and, there being no evidence as to such value in the record, the action must necessarily fail. *Coats v. Chicago, R. I. & P. Ry. Co.,* 239 Ill. 154; *Fry v. Southern Pac. Co.,* 247 Ill. 564. Under our interpretation of the bill of lading, the contract of carriage was not a through contract, but only to a con-

necting carrier. There was no special provision in the contract under which the defendant undertook to carry the shipment, on its own responsibility, to its ultimate destination, namely, the City of New York. The fact that it had lines in the United States did not necessarily subject the shipment to the Carmack Amendment in force in the United States. If part of the carriage of shipment had been over the lines of the defendant in the United States and then handed to a connecting carrier it might have raised a different question, but this we are not called upon to answer.

For the reasons stated in this opinion, the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL and FRIEND, JJ., concur.