A. J. TEBBE & SONS COMPANY v. BROWN EXPRESS.

No. A-7536. Decided November 23, 1960.
Rehearing Overruled January 18, 1961.
(341 S.W. 2d Series 642)

*North, Blackmon & White* and *Jack E. A. White,* of Corpus Christi, for petitioners.

The trial court erred as a matter of law in holding that the plaintiff was negligent in loading his onions aboard an unsuitable vehicle which had been furnished to it by the defendant carrier and that such negligence was the sole proximate cause of the loss of the onions and the Court of Civil Appeals erred in failing to reverse and render such erroneous judgment. Cleburne Peanut & Products Co. v. Missouri, K. & T. Ry. Co. of Texas, 221 S.W. 270; Fort Worth & D. C. Ry. Co. v. Hunt, 258 S W 593; Hines v. First Guaranty State Bank of Aubrey, 243 S.W. 972.

*King, Anderson & Porter* and *Charles R. Porter, Jr.* of Corpus Christi, for respondent.

458

In response to petitioner's point of error cited Blackburn v. C. R. I. & P. Ry. Co., 115 S W 875; Crawford v International & G N R R Co., 109 S.W. 987; DeBusk v. Guffee, 171 S.W. 2d 194.

MR. JUSTICE WALKER delivered the opinion of the Court.

This is a suit by A. J. Tebbe & Sons Company, petitioner, against Brown Express, respondent, for damages to a shipment of 600 sacks of onions. The onions were loaded by petitioner on respondent's trailer at Carrizo Springs, and respondent issued its uniform bill of lading showing that the same had been received in apparent good order and were consigned to M. R. Davis Bros., Chicago, Illinois. The shipment was interlined with another motor carrier at Dallas but was transported to its destination on respondent's trailer. The onions were found to be in bad condition upon arrival at Chicago and were sold for salvage.

The case was tried by the court without a jury, and judgment was rendered for respondent. Findings of fact were requested and filed, and the court found, among other things, that the trailer was not equipped with vents, that petitioner was negligent in loading the onions thereon, and that such negligence was the sole proximate cause of the damage. According to the conclusions of law, petitioner was denied a recovery for this reason and also because the court decided that the evidence failed to establish that respondent was negligent or that the damage occurred while the shipment was in respondent's custody. The Court of Civil Appeals affirmed on the basis of its holdings: (1) that there is evidence to support the trial court's conclusion that the Carmack Amendment, 49 U.S.C.A., section 20, par. (11), does not apply, and (2) that respondent did not contract to transport such shipment beyond its own lines and therefore is not responsible for damage occurring after the same was delivered to the connecting carrier. 326 S.W. 2d 548.

█ Congress has provided that with certain exceptions not material here nothing in Part II of the Interstate Commerce Act, where the Carmack Amendment is made applicable to motor carriers, shall include "motor vehicles used in carrying * * * agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation." 49 U.S.C.A., section 303 (b) (6). Onions are "agricultural commodities" within the meaning of this section, and the evidence shows that the

600 sacks shipped by petitioner filled the trailer to capacity. This indicates that no other property was being hauled at the time, and it is a matter of common knowledge that passengers are not normally carried for compensation in motor vehicles designed to transport such a commodity. There is no evidence suggesting that respondent is authorized to carry passengers for hire or ever used its motor vehicles for that purpose. We agree with the Court of Civil Appeals that the record supports the conclusion that no other property or passengers were carried by the truck in which the onions were hauled. The Carmack Amendment thus has no application, and petitioner must rely upon the common law if it is to recover in this action.

■ In the absence of a statute or special contract, the liability of a common carrier as such ordinarily terminates when the goods have been carried to the end of its line and delivered to a connecting carrier for transportation to their ultimate destination. But if the initial carrier contracts to carry the shipment to a point beyond its lines, its liability as a carrier extends over the entire route. While courts are in general agreement with respect to these basic propositions, there is a difference of opinion as to the showing that must be made to establish a contract for through transportation by the initial carrier. The English courts and some American cases hold that such an undertaking may, unless there is a qualifying agreement, be inferred from the mere receipt of property for transportation to a place not on the route of the receiving carrier. According to the majority American rule, however, the acceptance of goods consigned to a point beyond the line of the initial carrier is not enough, and the latter's carrier liability ends when the shipment is delivered to the connecting carrier unless the evidence affirmatively discloses an agreement to carry over the whole route. The latter view has been recognized and approved by the Supreme Court of the United States. See Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164 55 L. Ed. 167; Mich. Central R. Co. v. Mineral Springs Mfg. Co., 116 Wall. 318, 21 L. Ed, 297; Ogdensburg and L. C. R. Co. v. Pratt, 22 Wall. 123, 22 L. Ed. 827; Hunter v. Southern Pac. Ry. Co., 76 Texas 195, 13 S.W. 190; Gulf, C. & S. F. Ry. Co. v, Jackson & Edwards, 99 Texas 343, 89 S.W. 968. In Michigan Central R. Co. v. Myrick, 107 U.S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325, the court said that while a carrier may agree that its liability will extend over the whole route, such liability will not attach in the absence of a special agreement to that effect, and that "the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."

In response to petitioner's request for admissions, respondent admitted that it contracted as a common carrier to transport the onions to M. R. Davis Bros., Chicago, Illinois, and issued its uniform bill of lading receipting therefor. One of the trial court's additional conclusions of law is to the same effect. If we understand petitioner's argument, however, it does not rely on the admission except in support of its contention that the bill of lading is a contract by respondent to carry the shipment to the named consignee at Chicago. In addition to the information mentioned above, the instrument bears the notation "exempt commodity" and recites on its face that any person or corporation in possession of the property under the contract "agrees to carry to its usual place of delivery at said destination, if on its own railroad, water line, highway route or routes, or within the territory of its highway operations, otherwise to deliver to another carrier on the route to said destination." Spaces provided for showing the routing and the name of the delivering carrier were left blank.

Bills of lading containing provisions similar to the one quoted above have usually been construed as an agreement by the receiving carrier to transport only over its own line. See McEacheran v. Mich. Central R. Co., 101 Mich. 264, 59 N.W. 612; Skinner v. Hall, 60 Me. 477; Inhabitants of Plantation No. 4 v. Hall, 61 Me. 517; Glazer v. Old Dominion S. S. Co., 113 N.Y. Supp. 979; Fairfield v. Pacific Coast S. S. Co., 3 Cal: App. 106, 84 Pac. 438; Pennsylvania Co. v. Dickson, 31 Ind. App. 451, 67 N.E. 538. Courts which recognize the English rule seem to experience no difficulty in reaching the contrary conclusion, particularly where the bill of lading contains no limitation of liability and there are other provisions or extrinsic evidence indicating that the receiving carrier did contract to carry the shipment to destination. Elgin, J. & E. Ry. Co. v. Bates Mach. Co. 200 Ill. 636, 66 N.E. 326, 99 Am. St. Rep. 218; cf, Fox v. Canadian Pac. Ry. Co., 260 Ill. App. 482.

Tubize Chattilon Corp. v. White Transp. Co., 6 Fed. Supp. 15, 18, was decided before the Carmack Amendment was made applicable to motor carriers in general and before the passage of section 303 (b) (6) which expressly exempts vehicles carrying raw agricultural products. The bill of lading there considered was similar to the one involved in the present case, and the court held that under all of the evidence, including such instrument and the oral testimony, the trucking company had contracted to carry over the whole route. It said that the "claim of exemption from liability" was not established by the bill of lading,

and that if reference could properly be made to the other facts and circumstances disclosed by the evidence, the same showed as a fact that the parties intended and agreed that the defendant should be liable for the shipment through to ultimate destination. The following circumstances were cited in support of these conclusions: the absence of an express provision limiting the carrier's liability to damage occurring on its own line, the prepayment of freight to destination, the fact that the plaintiff insisted that the defendant assume liability over the whole route, and the evidence showing that the defendant frequently transported other shipments to the named destination in its own trucks by another route and so transported the major portion of the shipment in question.

A reading of the opinion in the Tubize case discloses that the court there adopted the English approach to the problem. It said quite frankly that the majority American rule governing the liability of railroads should not, on grounds of public policy, be applied to motor carriers in view of the different conditions under which they operate. Since Congress has now extended the Carmack Amendment to motor carriers and expressly provided that the same shall not be applicable to vehicles used to transport agricultural commodities, it seems to us that there is no basis for saying that an action for damage to an exempt shipment should be governed by any other rule. The question then is not whether the bill of lading contains a limitation or exemption of liability but whether the carrier has agreed to carry the shipment to its destination or has otherwise assumed responsibility over the entire route.

The provision quoted above does not necessarily limit respondent's liability or contract of carriage to its own lines. On the other hand we do not find anywhere in the bill of lading an undertaking by the receiving carrier to transport to the destination named therein except where the goods are consigned to a place on such carrier's route or within the territory of its operations. The evidence does not disclose whether the respondent's operating authority extends to Chicago, and there are no circumstances indicating that it agreed to carry the shipment there. The transportation charges were to be collected on delivery. Although respondent was quoting at least some of its shippers through rates on onions to Chicago, it does not appear that the parties agreed on such a rate for the shipment in question. While the onions were carried there in the original trailer and the routing and name of delivering carrier were not shown on the bill of lading, these circumstances do not suggest that respondent contracted to transport over the

entire route, and there is no evidence of any custom or conversation between the parties with reference to the particular shipment or other similar shipments.

Apart from the admission previously mentioned, the present record contains nothing to show an agreement by respondent to carry the onions to Chicago. Even if such admission were held to be controlling in spite of the fact that petitioner has not taken that position here or in the courts below, judgment could not be rendered in petitioner's favor because the amount of the damage was not found by the trial court and is not conclusively established by the evidence. Since we have concluded for the reasons stated below that the cause must be remanded for a new trial even though respondent is not subject to carrier liability over the whole route, the effect of the admission will not be considered further at this time.

■ The conclusions which are implicit in the trial court's findings, when considered in the light of the facts established by undisputed evidence, indicate that petitioner may be entitled to recover even though the Carmack Amendment has no application and respondent did not agree to carry the onions to their destination. If an initial carrier negligently furnishes an unsuitable car, it is liable for the resulting damage although the same may occur while the vehicle is on the line of a connecting carrier. This is the common law rule entirely aside from the Carmack Amendment and without regard to whether the defendant agreed to transport the shipment beyond its own lines. See Houston & T. C. R. Co. v. Wilkerson Bros., Texas Civ. App., 82 S.W. 1069 (no writ) ; International & G. N. R. Co. v. Aten, Texas Civ. App., 81 S W 346 (no writ) ; Hunt v. Nutt, Texas Civ. App., 27 S.W. 1031 (no writ) ; St. Louis, I. M. & S. Ry. Co. v. Marshall, 74 Ark. 597, 86 S.W. 802; Jones v. St. Louis & S. F. R. Co., 115 Mo., App., 232, 91 S.W. 158; 13 C. J. S. Carriers, section 51, p. 98; 9 Am. Jur. Carriers, section 891, p. 979. Respondent may not escape responsibility then for damage caused by its own negligence in furnishing an unsuitable trailer simply because the onions did not deteriorate until after they were delivered to another carrier.

The undisputed evidence discloses that respondent was actively soliciting the business of hauling onions and knew that the vehicle furnished by it to petitioner would be used for that purpose. As indicated above, the shipment involved in this case filled the trailer to capacity, and no other commodity was transported thereon. There is nothing in the record to suggest that petitioner selected the vehicle or was under any special obligation

to determine that the one supplied by the carrier was suitable for the use intended. In these circumstances it was the primary duty of respondent to furnish a trailer suitable for the safe carriage of the onions. See Cleburne Peanut & Products Co. v. Missouri, K. & T. Ry. Co. of Texas, Com. App., 221 S.W. 270; 13 C,J,S, Carriers section 49, p. 95; Am. Jur. Carriers, section 337, p. 631; Annotation, 18 L.R.A. (N.S.) 508.

Evidence given by petitioner's local manager, Joe H. Rugel, supports the conclusion that a ventilated trailer is reasonably required for the safe transportation of onions by truck. If that is so, respondent was under the duty to furnish such a vehicle. Forester & Co. v. Southern Ry. Co., 147 N.C. 553, 61 S.E., 524, 18 L.R.A. (N.S.) 508, 15 Ann. Cas. 143. The trial court evidently accepted Rugel's testimony, because it found that petitioner was negligent in loading the shipment on an unvented trailer. It also found that such negligence was the sole proximate cause of the damage. In making these findings the court necessarily concluded that the exercise of ordinary care required that the onions be transported in a vehicle equipped with vents and that their deterioration resulted entirely from the failure to do so rather than from some other cause. Since responsibility for use of the unvented trailer rests primarily upon respondent, it seems to us that an incorrect rule of law was applied when the court decided that petitioner had failed to establish that the damage was caused by respondent's negligence. The case must therefore be remanded for a new trial unless the judgment in respondent's favor can be supported by the finding that petitioner was negligent in loading the onions on an unvented trailer.

■ According to some cases, a carrier is not relieved of liability by the fact that the shipper used the vehicle knowing it to be unsuitable. See Ogdensburg & L. C. R. Co. v. Pratt, supra; St. Louis, I. M. & S. Ry. Co. v. Marshall, supra; Annotation, 19 L,R,A, (N.S. 952. This is undoubtedly true where the plaintiff has no reasonable means or opportunity of relieving himself of the situation, but the effect of actual negligence on the part of the shipper has not been considered by the courts when they declare or apply the rule stated in the Ogdensburg case. If it does not appear that another proper vehicle would have been promptly supplied by the carrier upon request, the shipper will not be deemed guilty of contributory negligence, or of having assumed the risk, when he uses the one furnished with knowledge that it is unsuitable. See Missouri, K. & T. Ry. Co. of Texas v. McLean, 55 Texas Civ. App. 130, 118 S.W. 161 (wr. ref.); Fort Worth & D. C. Ry. Co. v. Hunt, Texas Civ. App., 258 S.W. 593 (no writ); Sene-

ker v. Lusk, Mo. App., 190 S.W. 96. These and other cases suggest, however, that acceptance and use of the vehicle may constitute a defense provided the shipper knew of its condition and could have obtained a suitable one in time to serve his purpose by notifying the carrier. See Coupland v. Housatonic R. Co., 61 Conn. 531. 23 Atl. 870, 15 L.R. A. 534; Densmore Commission Co. v. Duluth, S.S. & A. Ry., 101 Wis. 563, 77 N.W, 904; Nicholson v. St. Louis & S. F. R. Co., 141 Mo. App. 199, 124 S,W, 573, We think this rule is clearly sound, at least where no breach of the carrier of a statutory duty is involved.[1] It is well settled that a shipper who assumes the duty of selecting the car under circumstances charging him with knowledge of defects and in reliance on his own rather than the carrier's judgment cannot hold the latter responsible for losses resulting from the nature or condition of the vehicle. McFaddin Rice Milling Co. v. Texas & N. O. Ry. Co., Texas Civ. App., 277 S.W. 191 (no writ) ; Edward Frohlich Glass Co. v. Pennsylvania Co., 138 Mich. 116, 101 N.W. 223, 110 Am. St. Rep. 310, 4 Ann. Cas. 1140; 13 C.J.S. Carriers, section 53, p. 99. The shipper who knowingly accepts and uses an unsuitable car supplied by the carrier instead of requesting and obtaining a proper vehicle when the latter course is reasonably available to him is deemed in law to have selected the one used and cannot subject the carrier to liability for damages caused by conditions which were known to him. See Nicholson v. St. Louis & S. F. R. Co., supra.

■ In the absence of a contract or other special circumstances giving rise to the duty, however, the shipper is under no obligation to inspect a vehicle furnished by the carrier and will not be charged with knowledge of defects simply because the same would have have been disclosed by a proper inspection. See Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Louisville Tin & Stove Co., 33 Ky. L. Rep., 92, 111 S.W. 358, 17 L.R.A, (N,S ) 1034; Annotation, 17 L.R.A. (N.S.) 1034. If the damage is caused by a latent defect not known to him, the carrier cannot escape liability by showing that the shipper inspected and accepted the vehicle. With the possible exception of a situation where the nature or condition of the vehicle is so open and obvious as to be apparent to anyone in the shipper's position, the latter will not be charged with notice in the absence of actual knowledge. See Hunt v. Nutt,

---

1.—It was said in Gulf, C. & S. F. Ry. Co. v. Trawick, 80 Texas 270, 15 S.W. 568, 18 S.W. 948, that railroad companies cannot absolve themselves from their statutory duty to provide suitable pens for cattle by showing that the same were so badly kept or constructed as to make it contributory negligence on the part of the shipper to use them. This decision is not necessarily inconsistent with the rule stated above, because the plaintiff there was probably compelled as a practical matter to use the facilities furnished if he wished to ship his cattle.

Texas Civ. App., 27 S.W. 1031, Leonard v. Whitcomb, 95 Wis. 646, 70 N.W. 817.

■ The evidence in the present case does not show that petitioner knew the trailer was unvented, and it does not appear that a proper vehicle would have been supplied in time to meet its needs if respondent had been notified that the one furnished was unsuitable. The record merely discloses that the onions were loaded by petitioner on an unvented trailer, and this will not support a finding that the shipper was either negligent or assumed the risk.

The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.

Opinion delivered November 23, 1960.

MR. JUSTICE SMITH, joined by JUSTICE GRIFFIN, dissenting.

I respectfully dissent. The petition for writ of error was granted on Points 1[1] and 4[2]. The court has, in my opinion, correctly decided that the Carmack Amendment has no application, thus disposing of Point 1. However, I cannot agree to the judgment reversing and remanding this case to the trial court for a new trial. There is no issue of fact to be determined by the trier of the fact.

The issues between the parties were sharply drawn. There is even a decided disagreement as to the nature of the suit. Petitioner contends that its cause of action for damages to the shipment of onions is founded upon breach of contract. Respondent says "No." I agree with petitioner.

On or before May 15, 1956, at the request of petitioner, the respondent delivered its closed trailer to the place designated by the petitioner for the purpose of loading onions. Petitioner had nothing to do with the selection of the trailer or car. Therefore, a discussion of the law applicable where the shipper selects the trailer or car is of no material importance. After the closed trailer was delivered and after a number of sacks of onions had been loaded on the trailer, the respondent issued its uniform straight bill of lading, acknowledging receipt of 600 sacks of onions. The

1.—"The Court of Civil Appeals erred in holding that the bill of lading contract was not a 'through' bill of lading in which Respondent Brown Express contracted as a common carrier for the transportation of Petitioner's onions to a named consignee at Chicago, Illinois.

2.—"The Court of Civil Appeals erred in not rendering a judgment for Petitioner based upon the undisputed evidence in the case."

bill of lading and the respondent's admissions reflect that the respondent contracted and agreed to deliver the onions to M. R. Davis Bros. in Chicago, Illinois. The respondent breached the contract and this suit resulted.

The trial court found the contract to be one for "through" shipment, but ruled against the shipper for the sole reason that it held recovery could not be allowed because of its opinion that the shipper's negligence in loading the onions in a vehicle that had no vents precluded recovery, even though the respondent failed to discharge the duty resting solely with it to furnish a trailer suitable for the safe discharge of the onions.

First: Was the contract one for "through shipment?" The respondent admitted, in response to petitioner's request for admission No. 1, that "it received, by and through its agents or employees, 600 sacks of onions from A. J. Tebbe & Sons Company at Carrizo Springs, Texas, on or about the 15th day of May 1956, and *contracted as a common carrier to transport said onions to M. R. Davis Bros., Chicago, Illinois,* for which Brown Express issued its uniform bill of lading — not negotiable — domestic, receipting for said onions * * *." The making of requests for admissions has come to be a common practice. Such practice is a laudable one in that contested issues are often reduced to a minimum because of the answers to such requests. In the present case, in view of the unqualified admission, supra, the petitioner was only required to introduce the request and answer. Petitioner relied upon this admission for all purposes, and not for a limited purpose, as indicated by the court. The admission definitely established a controlling feature of petitioner's case, to-wit, that the contract was one for a "through shipment."

The holding of the Court of Civil Appeals, to the effect that the bill of lading contract was not a through contract and contained a limitation of liability to a loss occurring while the goods were in the possession of the origin carrier, can have disastrous results not only to the shipper in the present case on a retrial, but to the shippers of like commodities in the future. The net effect of the holding is to leave the shipper, whose product is damaged in transit, without a remedy. In the case of Atlantic Coast Line Railroad Company v. Riverside Mills, 219 U.S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167 and 180, the dire results which would obtain if the holding is left standing is graphically stated in the following language:

"As a result the shipper could look only to the initial carrier

for recompense for loss, damage, or delay occurring on its part of the route. If such primary carrier was able to show a delivery to the rails of the next succeding carrier, although the packages might and usually did continue the journey in the same car in which they had been originally loaded, the shipper must fail in his suit. He might, it is true, then bring his action against the carrier so shown to have next received the shipment. But here, in turn, he might be met by proof of safe delivery to a third separate carrier. In short, as the shipper was not himself in possession of the information as to when and where his property had been lost or damaged, and had no access to the records of the connecting carriers who, in turn, had participated in some part of the transportation, he was compelled in many instances to make such settlement as should be proposed."

The Court of Civil Appeals' opinion in effect, constitutes a limitation of liability wherein the origin carrier would only be liable for a loss occurring on its own line. The holding is contrary to all the authoritative decisions on the question. See Tubize Chattilon Corporation v. White Transportation Co., 6 F. Supp. 15; Nebraska Co-operative Creameries, Inc. v. Des Moines Transportation Co., 16 Fed. Supp. 853; Michigan Central R. R. Co. v. Myrick, 107 U.S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325; Ogdensburg and Lake Champlain R.R. Co. v. Jefferson Pratt and Harrison G. Brigham, [22 Wall.], 89 U.S. 123, 22 L. Ed. 827. In this latter case, the court said:

"Was there evidence in this case that the Ogdensburg and L.C.R.R. Co. did contract as a common carrier to transport this property beyond its own terminus over other roads to Boston? The weight, the force or the degree of the evidence is not before us, if there was competent evidence, on which the jury might lawfully find the existence of the contract alleged.

"If the jury have found in the plaintiff's favor on the points, upon which evidence legally sufficient to justify it this court cannot interfere with their findings * * * .'

Turning now to the question of the negligence of the respondent in furnishing an unsuitable trailer: There is not the remotest possibility that a question of fact could be raised on that issue. The established facts require this court to render judgment for the petitioner on the issue, provided the amount of damages has been established with certainty. Apparently, the only reason the trial court did not render such judgment was, as announced from the bench, that the petitioner was negligent in loading the onions

in an unventilated vehicle. Petitioner discharged its burden by establishing that the onions were delivered to the carrier in good condition. The respondent offered nothing to rebut the presumption of good condition raised by the introduction of the bill of lading. The onions were worthless upon arrival in Chicago, Illinois. The respondent or his agents, the interline carriers, failed to keep the onions ventilated in transit, and the respondent without question furnished an unsuitable vehicle for the transportation of petitioner's onions.

The trial court found that the sole proximate cause of the onions being in a damaged and defective condition at destination was that they were transported in an unsuitable vehicle furnished by the respondent.

This finding is supported by the undisputed evidence. The witness Davis testified by deposition. Direct and cross-interrogatories were propounded. All answers showed that the trailer was a Brown Express Trailer No. 664; that the trailer was without any ventilation doors and solid throughout; that there was no ventilation in the truck. This testimony was verified by the written inspection report made by the United States Department of Agriculture Inspection; temperatures ranged from approximately 68 degrees to approximately 80 degrees. A written record of his findings verifies his testimony in this matter.

In holding the *petitioner* negligent for loading the onions on an unsuitable vehicle that had been furnished by respondent, the trial court was in error as a matter of law. The unsuitable trailer was furnished by the respondent and it should be held to answer in damages for its negligence which was the sole proximate cause of the damages to petitioner's onions. In the case of Ogdensburg and Lake Champlain R. R. Co. v. Jefferson Pratt & Harrison G. Brigham, supra, the United States Supreme Court had before it the precise question we have here. The question: "Did the plaintiffs, by putting their horses into a car which they knew was defective and unsuitable, thereby assume the risk of such effects and relieve the company from the responsibility." The answer was in the negative and is decisive of our question. In holding against the contention that the shippers assumed the risk, the court said:

"Third. The loss, it is contended, arose from the defective condition of the car in which the horses were placed, whereby it was exposed to danger from fire. It is said that Pratt was aware of the defective condition of the car; that he voluntarily made use of it, and that the risk of loss by its use thus became his and

ceased to be that of the Company. The judge charged the jury that it was the duty of the carrier to furnish suitable vehicles for transportation; that if he furnished unfit or unsafe vehicles he is not exempted from responsibility by the fact that the shipper knew them to be defective and used them; that nothing less than a direct agreement by the shipper to assume the risk would have that effect.

"There was a conflict in the testimony upon the point whether other cars were to be had. Pratt testified that he was compelled to take these cars or wait with his horses for a week. The station agent testified that there were other cars which Pratt might have had if he preferred them.

"The authorities sustain the position taken by the judge at the trial.

"In Steam Nav. Co. v. Bk., 6 How., 344, 383, MR. JUSTICE NELSON says: 'If it is competent at all for the carrier to stipulate for the gross negligence of himself and servants or agents in the transportation of goods, it should be required to be done at least in terms that would leave no doubt as to the meaning of the parties.'

"To this effect are the New York and Massachusetts cases before cited.

"In [Mich. Cent.] R. R. Co. v. [Mineral Springs] Mfg. Co., 16 Wall., 318 [83 U.S., XXI., 297], it was declared that the court did not intend to relax the rule by which the liability of carriers was established. In [New York Cent.] R. R. Co. v. Lockwood, 17 Wall., 357 [84 U.S. XXI., 627], the following, among other propositions, were reiterated and established by the unanimous judgment of the court:

1. That a common carrier cannot lawfully stipulate for exemption from responsibility. See 22 Wall. when such exemption is not just and reasonable in the eye of the law.

"2. That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants.

"The judge at the trial in this case might have gone much further than he did, and have charged that if the jury found the Company to have been negligent and careless in furnishing cars,

they would not be relieved from responsibility, although there had been an agreement that they should not be liable therefor." See also Cleburne Peanut & Products Co. v. Missouri, K. & T. Ry. Co. of Texas, Texas Com. App., 221 S.W. 270; Hines et al. v. First Guaranty State Bank of Aubrey, Texas Comm. App., 243 S.W. 972, 13 C.J.S., 95-99.

The undisputed proof in our case is that the petitioner did not select the trailer, and did not assume such duty. The respondent selected and furnished the trailer. Under such circumstances it is bound by the rules announced in the quotation from the Ogdensburg case, supra. It is to be noted that in the Ogdensburg case there was a conflict in the testimony upon the point as to whether other cars were to be had. However, the shipper testified that he had no choice and that he was compelled to take the cars or wait with his horses for a week. The shipper in our case had every right to assume that the respondent had performed its duty and furnished a suitable trailer. It did not select and it was under no duty to inspect the trailer for either latent or obvious defects. Anyone is bound to know that the shipper is "probably compelled as a practical matter to use the facilities furnished" if he wished to ship sound onions instead of rotten onions. But it is not a question of what might be practical. The respondent was under a duty to furnish a suitable trailer. Its failure was the sole cause of the loss sustained by the shipper.

In the Hines case, supra, the court said:

"The law requires a carrier to furnish such cars as will properly protect the goods that it contracts to ship.

" 'The general rule is that a carrier must furnish proper and suitable cars for every kind of goods which it holds itself out as ready to transport. If the carrier has been accustomed or has contracted to carry, or has held itself out as carrying, any particular class of goods, it must provide cars which are suitable for the carriage of such goods.' 15 Ann. Cas. 144, note.

" 'In the fulfillment of its duty to provide safe and suitable cars for the transportation of the goods offered the carrier must provide cars which will protect the goods from the elements, and no defect in the cars will excuse a carrier from liability on proof of injury to the goods.' " 10 C.J. 85, 86."

Assuming that no error otherwise exists, should the cause be remanded to determine the damage issue only, I think not. The

petitioner prays that judgment be rendered in accordance with the facts and the law. Petitioner's requests for admissions on this issue were answered that on May 21, 1956, and May 22, 1956, the onions had no market value whatsoever; that on May 21, 1956, these Texas Crystal Wax onions were selling for $2.75 per sack (600 sacks); that on May 22, 1956, the same class of onions was selling for $2.50 to $2.75 per sack.

The testimony of Mr. Davis is that on both dates the market value of the onions was $3.50 per sack. So we have the admissions on the one hand fixing a minimum market value of $2.50, and the testimony of Mr. Davis fixing a market value of $3.50. Since the request for admission fixing the minimum market value at $2.50 was framed by the petitioner with such figure stated therein, this court is authorized to render judgment on the basis of 600 sacks of onions at $2.50 per sack. See Owen Development Company v. Calvert, 157 Texas 212, 302 S.W. 2d 640. Unless the petitioner complains, certainly the respondent cannot be heard to question a judgment based on these figures. There is testimony to the effect that the onions sold as salvage for $72.85. However, this sum was applied toward the payment of some $300.00 freight charges.

I would, therefore, reverse both judgments below and render judgment for the petitioner.

Opinion delivered November 23, 1960.

Rehearing overruled January 18, 1961.