JOHN MORRELL & CO.,
Plaintiff-Appellant,

v.

FROZEN FOOD EXPRESS, INC.,
Defendant-Appellee.

No. 81–1624.

United States Court of Appeals,
Fifth Circuit.

March 18, 1983.

Rehearing Denied May 4, 1983.

Underwood, Wilson, Berry, Stein & Johnson, Josiah M. Daniel, III, Amarillo, Tex., for plaintiff-appellant.

Danny Needham, Amarillo, Tex., for defendant-appellee.

Before WISDOM, RUBIN and TATE, Circuit Judges.

PER CURIAM:

This case involves determining whether a common carrier, Frozen Food Express, or a packer-shipper, John Morrell & Co., will bear the loss for a load of beef that spoiled due to a malfunction in a trailer refrigeration unit. Frozen Food and other carriers spotted empty trailers at Morrell's facility for use in transporting carcass beef to Morrell's customers. On February 1, 1978, Morrell asked Frozen Food to transport a load of beef to Louisville, but Frozen Food advised Morrell on February 2 and 3 that it lacked "power" units to transport the trailer due to inclement weather. On February 4, Morrell loaded Frozen Food trailer no. 610 with carcass beef then in good condition. The refrigeration unit in the trailer was working properly at the time of loading.

On February 6, Frozen Food dispatched a tractor to pick up trailer no. 610, but the driver picked up another trailer by mistake. On February 7, Frozen Food dispatched another tractor, but it turned over traversing a bridge due to inclement weather. On February 8, a third tractor was dispatched and it arrived early on February 9. When the driver arrived, he checked the load and found that it was spoiled because of a refrigeration malfunction. Between February 4 and 9, Morrell had checked the exterior temperature gauge on the trailer, but it never conducted a visual inspection or a hand temperature check of the beef.

Morrell sued Frozen Food to recover for the spoiled beef. Morrell claimed damages under the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C.

§ 11707(a), alleging that it constructively delivered its beef in good condition to Frozen Food for transportation and that the beef was destroyed following the delivery. Morrell also contended that Frozen Food violated 49 U.S.C. § 11101(a) by failing to provide safe and adequate equipment and by failing to transport its slaughtered beef upon reasonable request. Finally, under the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm.Code Ann. § 17.41, Morrell contended that Frozen Food is liable for three times its actual damages because Frozen Food committed false, misleading, and deceptive acts and practices in connection with the requested transportation of the spoiled beef.

The district court held that Morrell did not make a prima facie showing of liability under § 11707(a)(1) because it failed to show actual or constructive delivery of the cargo to Frozen Food. It also held that Frozen Food fulfilled its duty under 49 U.S.C. § 11101(a) to provide safe and adequate equipment and found that any delay in picking up the load was due to inclement weather. With respect to the state law claim, the district court concluded that Morrell showed no conduct that violated the Texas Deceptive Trade Practices-Consumer Protection Act. Morrell challenges all of these holdings on appeal.

### I.

■ The Carmack Amendment imposes liability on carriers for damages to the freight they receive for transportation. The shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damage. *Missouri Pac. R. Co. v. Elmore & Stahl,* 1964, 377 U.S. 134, 138, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194. Morrell contends that it established its prima facie case, and that the district court erred in holding that it failed to prove actual or constructive delivery.

■ The district court's finding that no constructive delivery occurred is not clearly erroneous.[1] The parties had not agreed by custom or contract that goods could be deposited at one particular place and thereby be accepted without notice to the carrier. *See Illinois Central Railroad v. Moore,* 6 Cir. 1956, 228 F.2d 873, 877. In fact, Frozen Food's acceptance of any load is conditioned upon its right to inspect the carcass to see if it is in good condition. There also was no notice of the actual loading and no issuance of a bill of lading prior to the rejection of the load. These facts provide substantial support for the district court's finding that there was no delivery of the goods. *See Dugdale Packing Co. v. Atchison, Topeka, and Santa Fe Railway Co.,* W.D.Mo.1972, 347 F.Supp. 1276, 1281. Without a showing of delivery, Morrell has failed to prove its prima facie case under 49 U.S.C. § 11707(a)(1).

### II.

■ Morrell also contends that Frozen Food failed to provide safe and adequate equipment under 49 U.S.C. § 11101(a). Section 11101(a) provides that "a motor carrier shall provide safe and adequate service, equipment, and facilities." Under § 11101(a), a carrier "cannot palm off deficiences in equipment onto the shipper." *Federated Dept. Stores v. Brinke,* 5 Cir. 1971, 450 F.2d 1223, 1226. Morrell contends that Frozen Food violated § 11101(a) by providing a refrigeration unit that malfunctioned. The district court found that Frozen Food did not violate § 11101(a) and that the damage to the beef was because of Morrell's failure to inspect it properly. The district court did not interpret § 11101(a) to require a continuing obligation to provide safe and adequate equipment, but only to require that the trailer was safe, adequate, and suitable for its intended purpose when furnished initially.

---

1. A finding of constructive delivery is a factual determination. *See* R. Sigmon, Miller's Law of Freight Loss and Damage Claims 67–68 (3d ed.

1973). We cannot overturn this finding of fact unless it is clearly erroneous. Fed.R.Civ.P. 52(a).

We agree with the district court that Frozen Food did not violate § 11101(a).[2] The district court concluded that refrigeration units often malfunction[3] and that it is the custom and practice of the industry and Morrell to guard against this possibility by inspecting beef in trailers regularly. Imposing liability on Frozen Food would undercut the incentive of meatpacker-shippers to inspect the beef in trailers on their lots and would be contrary to the understanding between the parties concerning who was responsible for the beef.[4]

### III.

■ Morrell contends that Frozen Food did not fulfill its duty under 49 U.S.C. § 11101(a) & (b) to provide transportation service on reasonable request by failing to provide a tractor from Monday through Thursday. The district court found that Frozen Food did not refuse to provide service, but that inclement weather prevented Frozen Food from providing a tractor. We conclude that Frozen Food made a good faith effort to provide and eventually did provide service. There is no neglect or refusal to transport goods that is the basis for liability under § 11101(a) & (b). *See John-son v. Chicago, M., S.P. & P. Ry. Co.,* 9 Cir.1968, 400 F.2d 968, 971.

### IV.

■ Morrell's final contention is that Frozen Food violated the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.45 (Vernon 1978), by promising to pick up the beef on February 6 while actually picking it up on February 9 and by misrepresenting the quality and suitability of trailer no. 610. This contention is meritless. There is no evidence that Frozen Food misrepresented anything. The district court properly found that Frozen Food did not promise any definite time to pick up the load and that Frozen Food did not misrepresent the condition of its truck. We hold there was no liability under the Texas Deceptive Trade Practices Act.

### V.

For the most part, Morrell contests the district court's factfinding. Morrell has failed to show that the findings were erroneous or not supported by the evidence. We AFFIRM.

---

2. We note that this is not a case where the equipment provided was unsuitable for its intended purpose; the equipment simply malfunctioned. The cases that Morrell relies upon to argue that Frozen Food violated § 11101(a) involved equipment that was unsuitable for its intended purpose. In *Martin Imports v. Courier-Newsom Exports, Inc.,* 7 Cir.1978, 580 F.2d 240, the truck trailer involved was unheated, and the load of wine it contained became valueless when it froze. In *A.J. Tebbe & Sons Co. v. Brown Express,* 1960, 161 Tex. 456, 341 S.W.2d 642, damage to a load of onions resulted from a lack of vents in the trailer. Neither of these cases involved suitable equipment which was performing properly and which later malfunctioned in the control of the shipper.

3. Morrell's former traffic manager, Bill Sechrist, testified that it was not uncommon for refrigeration units and temperature gauges to malfunction. Record on Appeal, p. 552. He also testified that the only sure way to tell what the temperature is inside the trailer is to open the door and check. *Id.*

4. The only court we have found that considered the continuing duty of a carrier under § 11101(a) also reached this result. In *Dugdale Packing Co. v. Atchison, Topeka & Santa Fe R. Co.,* W.D.Mo.1972, 347 F.Supp. 1276, 1281–82, a case involving virtually the same facts as in this case, the court held that the carrier was not liable when it provided a safe and adequate refrigeration trailer which malfunctioned in the possession of the shipper and caused damage to a load of beef. The court considered the issue to be one of equipment maintenance, and it held that the shipper failed to carry its burden of showing that the equipment was not safe or adequate.